[Cite as *French v. Ascent Resources-Utica, L.L.C.*, 2023-Ohio-3228.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

MICHAEL P. FRENCH ET AL.,

Plaintiffs-Appellees,

v.

ASCENT RESOURCES-UTICA, LLC,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 JE 0024**

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 18-CV-326

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

Atty. Joshua E. O'Farrell and Atty. Jude B. Streb, Buckingham, Doolittle & Burroughs, LLC, 4277 Munson Street, NW, Canton, Ohio 44718, for Plaintiffs-Appellees and

Atty. Kevin L. Colosimo and Atty. Christopher W. Rogers, Frost Brown Todd LLP, Union Trust Building, 501 Grant Street, Suite 800, Pittsburgh, Pennsylvania 15219 and Atty. Matthew C. Blickensderfer, Frost Brown Todd LLP, 3300 Great American Tower, 301 East Front Street, Cincinnati, Ohio 45202, for Defendant-Appellant.

Dated: September 12, 2023

**D'APOLITO, P.J.**

{¶1}    Appellant, Ascent Resources – Utica, LLC, appeals from the November 18, 2022 judgment and the November 21, 2022 nunc pro tunc judgment of the Jefferson County Court of Common Pleas granting Appellees', Michael P. French, Karen French, Thomas Sutherland, Cynthia Sutherland, John Sutherland, Trustee of the Sutherland Family Trust, and Mary Ann Boyd, Trustee of the Lloyd and Mary Ann Boyd Irrevocable Trust, motion for summary judgment and overruling Appellant's motion for summary judgment.

{¶2}    This matter involves three oil and gas leases on the same property. The leases are typical in that they provided a primary term of five years after which the leases would expire unless Lessee paid an additional sum for an additional five years or Lessee commenced operations within five years.

{¶3}    On appeal, Appellant asserts the trial court erred in sustaining Appellees' motion for summary judgment as to count one of their first amended complaint (declaratory judgment) and overruling Appellant's motion for summary judgment. Appellant stresses its unitization of the leases was a valid exercise of its pooling and unitization rights. Appellant also contends it is entitled to summary judgment and dismissal of Appellees' amended complaint because its operations satisfied the terms of the leases to extend them beyond the primary term.

{¶4}    Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶5}    Appellees hold an interest in a 175.7 acre farm in Smithfield Township, Jefferson County, Ohio ("the Sutherland Farm"). At issue is the oil and gas underlying the land. The Sutherland Farm was conveyed to four siblings (Mary Ann Boyd, John Sutherland, Thomas Sutherland, and Karen French) from their mother prior to her death as co-tenants.

{¶6}    In three different leases, Appellees leased the Sutherland Farm's oil and gas rights to Mason Dixon Energy, Inc. ("Mason Dixon"). John Sutherland and his wife, Nina, and the Boyds leased their interests on June 6, 2007. On June 15, 2007, Thomas and Cynthia Sutherland entered into an identical oil and gas lease with Mason Dixon.

The Frenches leased their interest on July 11, 2007. Collectively these leases are referred to as ("the Leases"). The Leases were set to expire five years from the date they were entered into. The Leases also contained a provision that the Leases' terms could be extended if oil and gas was being produced.

{¶7}    Mason Dixon subsequently assigned its interest in the Leases to Hess Ohio Resources, LLC ("Hess"). In 2014, Appellees each executed an identical Amendment and Ratification of their Leases (collectively "Amendments"). Each of the Amendments included an identical 39-paragraph Addendum (collectively "Addenda"). In 2015, Hess assigned the Leases to Appellant.

{¶8}    The Leases, Amendments, and Addenda contain several provisions relevant to this matter.

{¶9}    Paragraph 2 of the Leases, entitled "Terms of Lease," states in part:

> It is agreed that this lease shall remain in force for a term of five (5) year(s) from this date, and as long thereafter as oil or gas (including coalbed methane gas, gob gas, casing-head gas and casing-head gasoline), or either of them, is produced from said land by the Lessee, its successors and assigns.

(Leases, Paragraph 2).

{¶10}    Paragraph 4 of the Leases, entitled "Delay Rental Payments," provides in part: "Drilling operations shall be deemed to commence when the first material is placed on the leased premises or when the first work, other than surveying or staking the location, is done thereon which is necessary for such operations."

{¶11}    Paragraph 7 of the Leases, entitled "Operations," states in part:

> If at the expiration of the primary term, oil or gas is not being produced on the leased premises or on acreage pooled therewith, but Lessee is engaged in drilling, deepening, plugging back or reworking operations thereon or shall have completed a dry hole thereon within ninety (90) days prior to the end of the primary term, this lease shall remain in force so long as operations on said well, or for the drilling, deepening, plugging back, or

Case No. 22 JE 0024

reworking of any additional well, are prosecuted with no cessation of more than ninety (90) consecutive days and, if they result in the production of oil or gas, so long thereafter as oil or gas is produced from the leased premises, or upon acreage pooled therewith.

(Leases, Paragraph 7).

{¶12} The Amendments replaced Paragraph 8 of the Leases, entitled "Pooling," with, in part, the following:

POOLING. Lessor grants to Lessee and Lessee may exercise, in Lessee's sole judgment, at any time and from time to time during the term of this Lease, Pooling Rights under this Lease. "Pooling Rights" include Lessee's right but not the obligation to pool, unitize or otherwise combine the Leased Premises or any part thereof with any other lands, leases, pool(s), unit(s) or interest(s) held by Lessee or others (hereinafter referred to as a "Unit" or "Units"), whenever Lessee deems it is necessary or advisable to do so in order to explore, develop or operate the Leased Premises or the lands pooled, unitized, or otherwise combined therewith, including without limitation the right to apply for and approve any plan for unit operations allowed or established by a governmental authority having jurisdiction. Except as specifically provided in this Lease, any such Unit shall not exceed 1280 acres, *provided however*, that larger Units may be created to conform to any well spacing or unit pattern prescribed or allowed by any governmental authority or to meet industry standards. Pooling in one or more instances shall not exhaust Lessee's Pooling Rights, and Lessee shall have the recurring right but not the obligation to revise in any manner and at any time the size, shape, or conditions of operation of any Units formed by expansion or contraction or both, including the drilling of multiple wells or laterals within said Unit. Pooling Rights may be exercised before or after drilling as to any one or more depths or formations, through any type of wells, or combination of any drilling or recovery techniques whether now

known or developed in the future. Lessee may create contiguous Units that utilize the same surface pads and facilities.

Any operations, production, drilling or reworking anywhere on a unit shall be treated for all purposes of the Lease (except for the calculation of any royalties to be paid to Lessor and of the provision of free gas) as if said activities were conducted on, or well(s) or lateral(s) were located on, the Leased Premises.

* * *

The exercise of Pooling Rights herein shall not operate as a cross-conveyance of interests in the Leased Premises.

Lessee, at any time and from time to time, and in its sole judgment, may terminate any Unit created hereunder. Any such termination shall not cause a surrender or cancellation of this Lease or diminish the Pooling Rights set forth therein.

(Emphasis sic.) (Amendments, p. 1-2).

**{¶13}** Paragraph 33 of the Addenda states:

"33. Commencement of Operations: Commencement of operations shall be defined as Lessee having secured a drilling permit from the State and further entering upon the herein described premises with equipment necessary to build any access road(s) for drilling of a well subsequently followed by a drilling rig for the spudding of the well to be drilled, and the commencement and completion of the drilling of a well.

(Addenda, Paragraph 33).

**{¶14}** Thus, Paragraph 33 sets forth the three requirements Appellant must satisfy in order to begin the process of operations under the Leases: (1) Appellant must secure a drilling permit from the State of Ohio; and (2) Appellant must enter upon the Sutherland Farm or upon property included in a drilling unit with the Sutherland Farm with the

necessary equipment to build access roads; and (3) Appellant must begin and complete the drilling of a well.[1]

{¶15} On July 27, 2018, Appellees instituted this action seeking a declaration from the trial court that Appellant's failure to satisfy the requirements set forth in Paragraph 33 of the Addenda prior to the expiration of the Leases' primary terms resulted in the Leases expiring by their express terms and by operation of law.

{¶16} On August 28, 2018, Appellant filed an answer and counterclaim. Appellant's answer asserted arbitration as an affirmative defense. Appellant's counterclaim set forth a sole cause of action for declaratory judgment that the Leases had not expired.

{¶17} After the parties completed limited discovery, Appellant filed a motion to stay proceedings pending arbitration. Appellant argued Appellees' claims were issues concerning the Leases or performance under the Leases and, therefore, the Arbitration provision required Appellees' claims to be submitted to arbitration.

{¶18} Appellees filed an opposition to Appellant's motion to stay raising two arguments. First, Appellees argued their claims were exempted from arbitration because they concerned the issue of title to the Sutherland Farm's mineral estate. Second, Appellees argued Appellant waived arbitration by filing a counterclaim invoking the trial court's jurisdiction and by waiting six months after appearing in this action to move to stay proceedings.

{¶19} On August 12, 2019, the trial court overruled Appellant's motion to stay pending arbitration. The court held this action concerned title to real property and, therefore, was exempted from arbitration pursuant to R.C. 2711.01(B)(1). The court discussed waiver but ultimately held that the issue of waiver was moot.

{¶20} On August 21, 2019, Appellant filed a timely notice of appeal with this court, Case No. 19 JE 0015, raising one assignment of error: "THE TRIAL COURT ERRED IN

---

[1] In the event Appellant satisfied each of these requirements, then the process of operations would be deemed to have commenced and Paragraph 7 of the Leases, entitled "Operations," would be triggered. The purpose of this Lease provision, had it been triggered, was to prevent the Leases' expiration, notwithstanding Appellant's failure to obtain or maintain the production of oil and gas, i.e., a requirement under the Leases' habendum clause that must be satisfied in order to perpetuate the Leases beyond their primary terms. Failure to meet the requirements of Paragraph 33 by the end of the Leases' primary terms, however, would result in the Leases expiring by their express terms and by operation of law.

ITS AUGUST 12, 2019 ORDER OVERRULING DEFENDANT'S MOTION FOR AN ARBITRATION STAY." *French v. Ascent Resources – Utica, LLC,* 7th Dist. Jefferson No. 19 JE 0015, 2020-Ohio-4719, ¶ 13.

**{¶21}** On September 30, 2020, this court reversed and remanded the matter to the trial court for it to decide whether Appellant had lost its right to arbitrate the controversy by failing to timely assert that right. *Id.* at ¶ 26-29.

**{¶22}** The Supreme Court of Ohio accepted Appellee French's appeal to review "whether an action seeking a determination that an oil and gas lease has expired involves 'the title to or the possession of real estate' within the meaning of R.C. 2711.01(B)(1)." *French v. Ascent Resources – Utica, L.L.C.,* 167 Ohio St.3d 398, 2022-Ohio-869, ¶ 9-10. On March 24, 2022, the Supreme Court held the action is not subject to arbitration. *Id.* at ¶ 21. The Supreme Court found that this court erred in reversing the trial court's judgment declining to stay the action in this case pending arbitration. *Id.* Consequently, the Supreme Court reversed this court's September 30, 2020 decision and remanded the matter to the trial court for further proceedings. *Id.*

**{¶23}** Upon remand to the trial court, Appellees filed a first amended complaint on May 18, 2022, alleging five counts: (1) declaratory judgment; (2) slander of title; (3) trespass; (4) conversion; and (5) unjust enrichment. On June 1, 2022, Appellant filed an answer and counterclaim for declaratory judgment, seeking a determination that the Leases remained in force and effect. Appellees filed a reply on June 27, 2022.

**{¶24}** On August 22, 2022, Appellees filed a motion for summary judgment. The next day, Appellant filed a motion for summary judgment.[2]

**{¶25}** Pursuant to its November 18, 2022 judgment and its November 21, 2022 nunc pro tunc judgment, the trial court granted Appellees' motion for summary judgment on count one of their amended complaint (declaratory judgment) and overruled Appellant's motion for summary judgment. The court found Appellant failed to commence

---

[2] Appellant attached copies of three Ohio Department of Natural Resources ("ODNR") horizontal well site construction permits, issued to Appellant on March 17, 2017, for the Jack Hamilton SMF JF Well Pad. On April 10, 2017, Appellant began construction of the Well Pad, along with its access road, to support its drilling of three units. Appellant declared the Jack Hamilton S SMJ JF Unit, dated May 30, 2017. On May 31, 2017, Matthew Pitts, Professional Engineer, certified completion of construction of the Well Pad. Construction verification was recorded in the Jefferson County, Ohio Recorder's Office. Two wells were hydraulically fractured on April 18, 2018, and another on May 2, 2018.

Case No. 22 JE 0024

operations prior to the expiration of Appellees' Leases resulting in those Leases expiring by their express terms and by operation of law. The court concluded that Appellant's attempt to form the Jack Hamilton S SMF JF Drilling Unit, only days before the first of the Leases was set to expire, was ineffective. This is so, the court reasoned, because as of the date Appellant recorded its Declaration of Pooled Unit (June 1, 2017), which was the first instance in which this proposed unit was identified, acreage owned and/or controlled by third-party entities, Gulfport Energy Corporation ("Gulfport") and Utica Minerals Development, LLC ("UMD"), was included in the proposed unit by Appellant. However, neither Gulfport nor UMD consented to the formation of said unit until August 24, 2017, after the expiration of Appellees' Leases. As a consequence, the court held that as of June 1, 2017, no agreement by and between Appellant, Gulfport, and UMD existed relative to the formation of the Jack Hamilton S SMF JF Drilling Unit.

{¶26} Appellant filed this appeal, Case No. 22 JE 0024, and raises one assignment of error.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED IN SUSTAINING PLAINTIFFS' MSJ AS TO COUNT ONE OF THEIR FIRST AMENDED COMPLAINT AND OVERRULING ASCENT'S MSJ.**

{¶27} In its sole assignment of error, Appellant argues the trial court erred in granting Appellees' motion for summary judgment on count one of their amended complaint (declaratory judgment) and overruling Appellant's motion for summary judgment. At issue, Appellant asserts, is whether creation of the Jack Hamilton S SMF JF Unit unitized together Appellees' Leases with the neighboring Jack Hamilton Lease and whether it commenced operations under the Leases. *See* (1/30/2023 Appellant's Brief, p. 11); (3/23/2023 Appellant's Reply Brief, p. 1). Appellant believes Appellees' "interpretation [of Paragraph 33] is untenable because it rewrites Paragraph 33 into three conditions precedent and conveniently ignores the phrase 'subsequently followed by.'" (1/30/2023 Appellant's Brief, p. 24).

An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

"(T)he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293, 662 N.E.2d 264. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the

motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327, 364 N.E.2d 267.

*Doe v. Skaggs*, 7th Dist. Belmont No. 18 BE 0005, 2018-Ohio-5402, ¶ 10-12.

**{¶28}** An oil and gas lease is a contract subject to the same rules of interpretation as other written agreements. *Shutway v. Chesapeake Exploration, LLC*, 7th Dist. Belmont No. 18 BE 0030, 2019-Ohio-1233, ¶ 27.

The court's role in reviewing a contract is to determine the parties' intent and give effect to it. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St. 3d 270, 273, 714 N.E.2d 898 (1999). "A contract that is, by its terms, clear and unambiguous requires no interpretation or construction and will be given the effect called for by the plain language of the contract." *Cadle v. D'Amico*, 7th Dist., 2016-Ohio-4747, 66 N.E.3d 1184, ¶ 22, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989).

*Marquette ORRI Holdings, LLC v. Ascent Resources-Utica, LLC*, 7th Dist. Belmont No. 21 BE 0035, 2022-Ohio-3786, ¶ 26.

**{¶29}** As stated, Paragraph 33 of the Addenda states:

"33. <u>Commencement of Operations:</u> Commencement of operations shall be defined as Lessee having secured a drilling permit from the State and further entering upon the herein described premises with equipment necessary to build any access road(s) for drilling of a well subsequently followed by a drilling rig for the spudding of the well to be drilled, and the commencement and completion of the drilling of a well.

(Addenda, Paragraph 33).

**{¶30}** Paragraph 33 clearly and unambiguously identifies the three requirements Appellant must satisfy in order to begin the process of operations under the Leases: (1) Appellant must secure a drilling permit from the State of Ohio; and (2) Appellant must enter upon the Sutherland Farm or upon property included in a drilling unit with the

Sutherland Farm with the necessary equipment to build access roads; and (3) Appellant must begin and complete the drilling of a well. Failure by Appellant to satisfy these requirements prior to the expiration of the Leases' primary terms results in the Leases expiring by their express terms and by operation of law.

**{¶31}** Here, Appellant claims it established that the Leases were in fact unitized with the Jack Hamilton property as of the June 1, 2017 recording of the Jack Hamilton S SMF JF Drilling Unit. The record reveals, however, that Appellant did not satisfy the foregoing requirements under Paragraph 33 of the Addenda. Regarding the second requirement, Appellant's attempt to form the Jack Hamilton S SMF JF Drilling Unit was ineffective due to the proposed unit including acreage owned and/or controlled by Gulfport and UMD.

**{¶32}** Appellant filed its Declaration and Notice of Pooled Unit ("DPU") on June 1, 2017. The proposed Drilling Unit is identified by Appellant in the June DPU and includes the Sutherland Farm, the Jack Hamilton property, and over 30 other tracts of land. Multiple tracts of land included by Appellant within this proposed Drilling Unit were not owned and/or controlled by Appellant. Rather, they were owned and/or controlled by Gulfport or UMD. Thus, Gulfport and UMD were necessary, consenting parties in order to form this proposed Drilling Unit.

**{¶33}** The language contained in the June DPU provided that in order for the "pooling, unitization and combination of the Leases and oil and gas estates herein described" and for the Jack Hamilton S SMF JF Drilling Unit to be formed, the "undersigned parties," i.e., Appellant, Gulfport, and UMD, "who join in the execution [of the DPU] to evidence their consent" to the formation of this Drilling Unit. (6/1/2017 DPU). At that time, however, Appellant had not obtained Gulfport's or UMD's consent. The last page of the DPU reveals that the signature lines for both Gulfport and UMD's representatives are blank. (*Id.*) Appellant recorded the June DPU with only its representative's signature.

**{¶34}** On August 24, 2017, Appellant filed a new DPU with the appropriate signatures from Gulfport and UMD. Nevertheless, Appellees' Leases had already expired. Thus, Appellant failed to properly form a drilling unit prior to the expiration of

Appellees' Leases' primary terms. As a result, Appellees' Leases expired automatically by their express terms and by operation of law.

**{¶35}** Appellant cites to *Scenicview Estates, LLC v. Eclipse Resources I, LP,* S.D. Ohio No. 2:19-cv-39, 2022 WL 715751 (March 10, 2022), providing the lessee with the right to unitize the lease with other lands including those owned by others. The District Court stated that months before Eclipse filed its DPU for the Ballpark Unit, "Eclipse negotiated with CNX to obtain a working interest in CNX-controlled acreage it hoped to include in the Ballpark Unit." *Id.* at *2. Thus, as Eclipse either controlled all acreage included in the Ballpark Unit through the lease or by virtue of Eclipse securing a working interest in CNX-leased acreage, it was not required to obtain the consent of any other party in its formation of the Ballpark Unit.

**{¶36}** In the case sub judice, however, Appellant did not control and/or own all acreage it attempted to include in the proposed Jack Hamilton S SMF JF Drilling Unit. As stated, Gulfport's and UMD's consent was necessary for the effective formation of the Jack Hamilton S SMF JF Drilling Unit, which did not happen until after Appellees' Leases expired.

**{¶37}** Regarding the first requirement under Paragraph 33 of the Addenda, Appellant failed to secure a drilling permit from the State of Ohio. Before the expiration of Appellees' Leases, Appellant failed to obtain a drilling permit for any well capable of producing oil and/or gas from the Sutherland Farm or on lands in which the Sutherland Farm was unitized. Instead, on April 12, 2017, ODNR issued to Appellant three stratigraphic test well permits.

**{¶38}** Michael McCormac, an ODNR Administrator, confirmed that stratigraphic test wells are separate and distinct wells from oil and gas wells which required separate permits to be drilled. (Exhibit 11). McCormac explained that an oil and gas well, which can be drilled vertically, directionally, or horizontally, is drilled for the purpose of producing oil and/or gas. (*Id.*) Stratigraphic test wells, on the other hand, were not permitted by the ODNR to be utilized for the production of oil and/or gas in Ohio. (*Id.*)

**{¶39}** Thus, Appellant did not identify any drilling unit in its application for permits for these stratigraphic test wells when submitting the same to ODNR. It is also noteworthy that none of these stratigraphic test well sites were located on the Sutherland Farm.

Case No. 22 JE 0024

{¶40} Regarding the third requirement under Paragraph 33 of the Addenda, Appellant failed to commence and complete the drilling of a well. Appellant applied for and received permits to drill new horizontal oil and gas wells after the expiration of Appellees' Leases' primary terms.

{¶41} On July 25, 2017, Appellant submitted its first application to ODNR to drill a new horizontal oil and gas well, the "Jack Hamilton S SMF JF 6H." This was the first time in which Appellant identified Appellees as being a part of any proposed drilling unit in any submission to ODNR. On August 23, 2017, ODNR issued a permit to Appellant granting Appellant permission to drill this new well. The Jack Hamilton S SMF JF 6H horizontal oil and gas well utilized the same surface location and wellbore as the Jack Hamilton W SMF JF 3 vertical stratigraphic test well and, therefore, were assigned the same API well number.

{¶42} On September 13, 2017, Appellant submitted another application to ODNR to drill a new horizontal oil and gas well, the "Jack Hamilton E SMF JF 5H." Landowners were identified, including Appellees, whose property was part of the drilling unit. On October 11, 2017, ODNR issued a permit to Appellant granting Appellant permission to drill this new well. The Jack Hamilton E SMF JF 5H horizontal oil and gas well utilized the same surface location and wellbore as the Jack Hamilton S SMF JF 2 vertical stratigraphic test well and, therefore, were assigned the same API well number.

{¶43} On September 13, 2017, Appellant submitted another application to ODNR to drill a new horizontal oil and gas well, the "Jack Hamilton E SMF JF 7H." Landowners were identified, including Appellees, whose property was part of the drilling unit. On October 11, 2017, ODNR issued a permit to Appellant granting Appellant permission to drill this new well. The Jack Hamilton E SMF JF 7H horizontal oil and gas well utilized the same surface location and wellbore as the Jack Hamilton E SMF JF 7 vertical stratigraphic test well and, therefore, were assigned the same API well number.

{¶44} The record reveals that vertical stratigraphic test wells are separate and distinct from horizontal oil and gas wells. First, stratigraphic test wells are utilized for the sole purpose of gaining structural or stratigraphic information, whereas oil and gas wells are designed to produce oil and/or gas from a targeted formation. (Exhibits 10, 11). As a result, ODNR treated these wells differently and required separate permits to drill each

type of well. (Exhibit 11). Second, stratigraphic test wells are not permitted to be utilized for production of oil and/or gas. (*Id.*) Thus, Appellant was prohibited from drilling a horizontal oil and gas well pursuant to a stratigraphic test well permit. Appellant was required to submit separate applications to ODNR to obtain separate permits for the drilling of stratigraphic test wells and horizontal oil and gas wells.

{¶45} Appellant's corporate representative, Kacie Booher, admitted that in order for Appellant to drill a horizontal well from a wellbore previously utilized by a stratigraphic test well, Appellant was required to submit a new application for a permit to drill a horizontal oil and gas well. (Exhibit 9). Booher also admitted than in order for Appellant to produce oil and gas from a horizontal oil and gas well, Appellant was required to obtain a new permit. (*Id.*)

{¶46} "'Unitization' refers to the consolidation of minerals or working interests covering all or part of a common source of supply." *Paczewski v. Antero Res. Corp.,* 7th Dist. Monroe No. 18 MO 0016, 2019-Ohio-2641, ¶ 4. "'Pooling' is the joining together of small tracts or portions of tracts for the purpose of having sufficient acreage to receive a well drilling permit under the relevant state or local spacing laws and regulations, and for the purpose of sharing production by interest owners in the pooled unit." *Id.* at ¶ 5. A drilling permit cannot be obtained by an oil and gas operator until after the operator has "pooled" acreage and identified the same in connection with its application to receive a drilling permit. *See, e.g., Id.*

{¶47} Again, Appellant did not identify any drilling unit when submitting its applications for stratigraphic test well permits to ODNR in March 2017. The attempted pooling of the Sutherland Farm did not occur until Appellant filed the Jack Hamilton S SMF JF Drilling Unit on June 1, 2017. Only when Appellant filed applications for permits to drill new, horizontal oil and gas wells did it identify a drilling unit to ODNR, the earliest of which was on or about July 25, 2017, after Appellees' Leases expired.

{¶48} A permit for a stratigraphic test well does not constitute a drilling permit for purposes of Paragraph 33 of the Addenda. Paragraph 33 requires that Appellant commence and complete "the drilling of a well" prior to the expiration of Appellees' Leases' primary terms in order to meet the definition of "Commencement of Operations," which Appellant failed to do.

{¶49} The Jack Hamilton S SMF JF 6H horizontal oil and gas well was commenced on September 2, 2017 and completed on January 16, 2018. (Exhibits 5, 10). The Jack Hamilton E SMF JF 5H horizontal oil and gas well was commenced on September 6, 2017 and completed on December 30, 2017. (Exhibits 10, 12). The Jack Hamilton E SMF JF 7H horizontal oil and gas well was commenced on August 29, 2017 and completed on February 10, 2018. (Exhibits 10, 17). Appellant admits it did not complete the drilling of an oil and gas well on the Sutherland Farm or on any pooled unit that included acreage from the Sutherland Farm on or before the expiration of Appellees' Leases' primary terms. (Exhibit 12).

{¶50} The only wells Appellant could have commenced or completed prior to the expiration of Appellees' Leases' primary terms are the following vertical stratigraphic test wells: the Jack Hamilton W SMF JF 3 vertical stratigraphic test well; the Jack Hamilton S SMF JF 2 vertical stratigraphic test well; or the Jack Hamilton E SMF JF 7 vertical stratigraphic test well. Rob Ford, Appellant's Director of Drilling/Drilling Manager, revealed that Appellant never intends to drill stratigraphic test wells, although it applies for and receives such permits. (Exhibit 24). No vertical stratigraphic test well at issue was ever commenced or completed on the Sutherland Farm. (*See Id.*) Also, as stated, a stratigraphic test well is not permitted to be utilized for the production of oil and/or gas. (Exhibit 11). Thus, no drilling units are associated with vertical stratigraphic test wells. Further, the vertical stratigraphic test wells at issue were drilled on Jack Hamilton's property, not on the Sutherland Farm. (Exhibit 9).

{¶51} Because Appellant did not commence or complete any oil and gas well with which the Sutherland Farm was unitized prior to the expiration of Appellees' Leases' primary terms, Appellant failed to commence operations as defined under Paragraph 33 of the Addenda.

{¶52} Paragraph 33, which identifies the requirements Appellant must satisfy to start the process of operations, is consistent with the Operations Clause of Paragraph 7 of the Leases.

{¶53} As stated, Paragraph 7 of the Leases, entitled "Operations," states in part:

> If at the expiration of the primary term, oil or gas is not being produced on
> the leased premises or on acreage pooled therewith, but Lessee is engaged

in drilling, deepening, plugging back or reworking operations thereon or shall have completed a dry hole thereon within ninety (90) days prior to the end of the primary term, this lease shall remain in force so long as operations on said well, or for the drilling, deepening, plugging back, or reworking of any additional well, are prosecuted with no cessation of more than ninety (90) consecutive days and, if they result in the production of oil or gas, so long thereafter as oil or gas is produced from the leased premises, or upon acreage pooled therewith.

(Leases, Paragraph 7).

**{¶54}** Once the requirements in Paragraph 33 are satisfied, (1) Appellant must secure a drilling permit from the State of Ohio; and (2) Appellant must enter upon the Sutherland Farm or upon property included in a drilling unit with the Sutherland Farm with the necessary equipment to build access roads; and (3) Appellant must begin and complete the drilling of a well, the process of operations begins, thereby triggering the Operations Clause of Paragraph 7 of the Leases. As long as Appellant is engaged in operational activities pursuant to Paragraph 7 of the Leases, the Operations Clause acts to prevent the Leases from expiring due to non-production of oil and gas, i.e., a requirement under the Leases' habendum clauses. Without the Operations Clause, the Leases would expire by their express terms and by operation of law as the habendum clauses state that the Leases remain in effect only so long as oil or gas is being produced therefrom. Paragraphs 7 and 33 are not conflicting. Rather, both provisions serve separate, complimentary functions.

**{¶55}** Considering the parties' agreements in their entirety, it is apparent that Appellant failed to commence operations, as expressly defined in Paragraph 33 of the Addenda, prior to the expiration of the Leases' primary terms, thereby resulting in Appellees' Leases terminating by their express terms and by operation of law. The "clear and unambiguous" requirement that Appellant "begin and complete the drilling of a well" (Paragraph 33) in order to commence operations under the Leases is consistent with the Operations Clause contained within the Leases (Paragraph 7). *See Marquette, supra,* at ¶ 26 ("A contract that is, by its terms, clear and unambiguous requires no interpretation

or construction and will be given the effect called for by the plain language of the contract.")

**{¶56}** Accordingly, the trial court did not err in granting Appellees' motion for summary judgment and overruling Appellant's motion for summary judgment.

## CONCLUSION

**{¶57}** For the foregoing reasons, Appellant's sole assignment of error is not well-taken. The November 18, 2022 judgment and the November 21, 2022 nunc pro tunc judgment of the Jefferson County Court of Common Pleas granting Appellees' motion for summary judgment and overruling Appellant's motion for summary judgment are affirmed.

Waite, J., concurs.

Hanni, J., concurs.

Case No. 22 JE 0024

—————————————

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgments of the Court of Common Pleas of Jefferson County, Ohio, are affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**