[Cite as *Stingle v. Ascent Resources-Utica, L.L.C.*, 2026-Ohio-1945.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

CHARLES STINGLE JR. et al.,

Plaintiffs-Appellees,

v.

ASCENT RESOURCES-UTICA, LLC,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No.  25 JE 0020

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 25-CV-312

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Joshua E. O'Farrell*, *Atty. Jude B. Streb,* Buckingham, Doolittle & Burroughs, LLC, and *Atty. Michael Bednar*, Blake, Bednar, Blake & Richardson, for Plaintiffs-Appellees and

*Atty. Daniel T. Donovan, P.C., Atty. John C. O'Quinn, P.C. (pro hac vice), Atty. Saunders McElroy (pro hac vice),* Kirkland & Ellis LLP, and *Atty. John Kevin West*, Steptoe & Johnson PLLC, for Defendant-Appellant.

Dated:  May 20, 2026

**Robb, J.**

{¶1} Appellant, Ascent Resources-Utica, LLC, appeals the September 16, 2025 judgment denying its motion for stay pending arbitration. This case involves the application of an arbitration agreement after the parties' oil and gas leases allegedly expired. Ascent argues federal law dictates this case must be arbitrated. Ascent asks us to reverse and order the trial court to stay the proceedings and to compel arbitration. For the following reasons, we affirm.

## Statement of the Case

{¶2} Appellees, Charles Stingle Jr., 26 other individuals, and one limited liability company, filed a complaint in June of 2025 for declaratory judgment, ejectment, quiet title, trespass, conversion, fraud, and unjust enrichment against Ascent. Appellees allege they own interests in real property and the oil and gas interests associated with their respective real properties located in Smithfield Township, Warren Township, and Mount Pleasant Township in Jefferson County. (June 9, 2025 Complaint.)

{¶3} Appellees allege they or their predecessors entered oil and gas leases with Mason Dixon Energy, Inc., which were eventually acquired by Ascent. Appellees claim they executed five-year primary term extensions with Ascent that extended their respective leases until 2017. Appellees claim each of their lease agreements had common terms governing the commencement of drilling operations. (June 9, 2025 Complaint.)

{¶4} Appellees also contend their respective oil and gas leases expired before Ascent commenced its drilling operations. Notwithstanding the expiration of their leases, Appellees allege Ascent commenced drilling operations after the expiration of each and improperly made them believe their leases were triggered. (June 9, 2025 Complaint.)

{¶5} In addition to the other allegations, count seven of Appellees' complaint seeks declaratory judgment. Appellees seek a determination that the arbitration provision in the leases does not apply after the expiration of the leases since the agreements did not contain survival clauses. (June 9, 2025 Complaint.)

**{¶6}** In lieu of an answer, Ascent filed a motion to stay the trial court proceedings and asked the court for an order compelling the parties to arbitrate the issues raised in Appellees' complaint. Ascent argued Appellees accepted royalty payments and the parties agreed to arbitrate any issues in the 16 lease agreements. Ascent claims it commenced production of natural gas from the properties in 2016 and 2017. Ascent claims Appellees did not contest the validity of the lease agreements until after accepting eight years of gas production and royalty payments and after Ascent served demands for arbitration. Ascent alleges after eight years of production and payments, Appellees informed Ascent that their leases had terminated. After failed attempts to mediate, Ascent served its demands for arbitration on Appellees June 9, 2025. Ascent claims Appellees refused to arbitrate and filed this lawsuit later the same date. (July 7, 2025 Motion to Compel & Stay.)

**{¶7}** Ascent alleged the same arbitration agreement was in each of the leases, which states:

> **Arbitration:** Any questions concerning this lease or performance thereunder shall be ascertained and determined by three disinterested arbitrators, one thereof to be appointed by Lessor, one by the Lessee and the third by the two so appointed as aforesaid and the award of such collective group shall be final and conclusive.
>
> Arbitration proceeding hereunder shall be conducted at the county seat or the county where the Lease is filed or the action occurred which is cause for the arbitration, or such other place as the parties to such arbitration shall all mutually agree upon. Each party will pay its own arbitrator and share costs of the third arbitrator equally.

(July 7, 2025 Motion to Compel & Stay.)

**{¶8}** Because the leases involve interstate commerce Ascent asserted its motion to compel is governed by the Federal Arbitration Act (FAA), which is to be liberally construed in favor of arbitration. Ascent also argued Appellees' allegation the leases were expired does not affect the viability of the mandatory arbitration provision. Ascent disagreed that this court's decision in *French v. Ascent Resources-Utica, LLC*, 2023-Ohio-3228 (7th Dist.), governs. Instead, Ascent urged the trial court to find *French*

concerned the application of the Ohio Arbitration Act and an exception for disputes involving real estate, which is in derogation of federal law that does not contain a similar exception.  (July 7, 2025 Motion to Compel & Stay.)

{¶9}  Moreover, Ascent argued the broad arbitration language in its leases with Appellees governs regardless of the alleged expiration of the parties' contracts.  (July 7, 2025 Motion to Compel & Stay.)

{¶10} Appellees opposed the motion, and consistent with the assertions in their complaint, urged the court to find that because the leases were expired by their own terms, the agreements to arbitrate contained in the leases had no force or effect. Appellees argued there was no factual dispute the leases were expired by their own terms.  They also urged the court to find the leases did not contain survival clauses and none of the exceptions set forth by the United States Supreme Court in *Litton Financial Printing Div., a Div. of Litton Business Systems, Inc. v. N.L.R.B.*, 501 U.S. 190, 209 (1991), applied.  (July 28, 2025 Opposition.)

{¶11} Ascent filed a reply in support of its motion.  It denied the leases were expired, and urged the trial court to find the interpretation of the leases and a ruling on whether the leases terminated was for the arbitrators.  Additionally, Ascent urged that *French* was distinguishable in light of the clauses present here governing no automatic forfeiture and cure rights and since Appellees accepted royalty payments for years despite the alleged expiration of the lease agreements.  (August 14, 2025 Reply.)

{¶12} Appellees filed a sur-reply, with leave of court, in opposition to the motion to stay and compel arbitration.  Appellees directed the trial court to federal cases in support of their opposition, including *Local 377 Chauffeurs, Teamsters, Warehousemen & Helpers Union v. Shelly & Sands, Inc.*, 890 F.Supp.2d 827, 833 (N.D.Ohio 2012), for the proposition that whether a dispute is arbitrable is a question for the court.  (August 21, 2025 Sur-Reply.)  The trial court held a hearing on the motion, heard competing arguments, and subsequently denied the motion to stay and compel arbitration.

{¶13} At the hearing, Appellees argued the court had the authority to determine if the leases were expired.  They argued the leases expired because there was no commencement and the lease requirements for commencement were not met by Ascent. Appellees asserted Ascent's drilling activities and conduct allegedly constituting

commencement occurred after the leases expired. Further, because the leases were expired, Appellees claim the arbitration clauses were inapplicable. Appellees also emphasized the leases did not contain survival clauses. (August 25, 2025 Tr.)

{¶14} Ascent, on the other hand, argued Appellees subsequently ratified the continuation of the lease agreements, and because Ascent sought declaratory judgment, the broad language of the arbitration clauses applies and governs the interpretation of the agreements. (August 25, 2025 Tr.)

{¶15} The trial court explained the parties' arbitration clause governs if a dispute occurs under the lease or during the lease term. However, if the claim is that the lease is no longer viable, absent a survival clause, an arbitration clause "dies" with the expiration of the lease. The trial court found Appellees' claims concern post-release activities, including trespass. Further, the court found Ascent's defenses invoked the lease and claimed it was applicable; Appellees' affirmative claims did not. (September 16, 2025 Judgment.)

{¶16} The trial court examined the lease language relative to commencement of operations and the savings clause in the No Automatic Forfeiture/Cure Rights clause. The court explained that because there were no wells at the time the leases expired, the savings clauses were not triggered. The court further noted the leases did not permit the creation of a well after the leases expired. The court denied the motion to stay and compel arbitration, finding the case was not governed by "an expired paragraph of an expired lease." Consistent with the motions pending before it, the court advised its decision was not on the actual merits of whether the leases had expired. Instead, the court limited its decision to the enforcement of the arbitration clauses. (September 16, 2025 Judgment.)

{¶17} Ascent moved to stay the trial court proceedings pending its appeal. The parties later stipulated to stay the trial court proceedings until the resolution of Ascent's appeals from the trial court's September 16, 2025 judgment. (September 24, 2025 Agreed Entry.) Ascent raises one assignment of error.

Assignment of Error

{¶18} Ascent's sole assigned error asserts: "The trial court erred in overruling Ascent's Motion to Compel Arbitration and Stay Litigation."

{¶19} Ascent argues the court erred by interpreting the leases to determine they had expired when that undertaking was reserved for arbitration. Ascent contends federal law and the FAA govern and dictate the arbitration agreements apply here.

{¶20} Additionally, Ascent attempts to distinguish the *French* decision relied on by the trial court. Ascent argues it "cured" its default and Appellees "ratified" the ongoing relationship by accepting payments and not objecting to wells being drilled after the lease term. Furthermore, Ascent contends the arbitration analysis undertaken by the trial court determined the ultimate decision, i.e. whether the lease had expired, and this issue was reserved for arbitration.

{¶21} Last, Ascent contends the court's conclusion that Appellees' primary claims are for trespass is erroneous—instead, Ascent contends all of the claims arise from the parties' agreements. Thus, arbitration is required.

{¶22} Appellees disagree. They urge us to affirm the trial court's judgment denying Ascent's motion to stay and compel arbitration. Appellees additionally urge this court to extend the trial court's holding beyond the issue of arbitrability. They ask us to render a decision on the merits and conclude the leases terminated on the merits.

{¶23} In their complaint, Appellees assert they are the owners of 1,690 acres of real property in Jefferson County and the oil and gas rights underlying the same. They contend each of the leases had a five-year primary term with an option to extend the term for another five years. Each lease had the same Addendum containing an arbitration clause and a clause defining the commencement of operations. Appellees acknowledge each of their leases was extended for an additional five-year term, pursuant to the Amendment and Ratification of Oil and Gas Leases (Amendment). However, each Amendment contains an explicit end date for each lease agreement. Appellees contend each lease expired by its own terms and by operation of law due to Ascent's failure to commence drilling during the second primary term and before the passing of the end dates for each lease as set forth in the Amendments. (June 9, 2025 Complaint.)

{¶24} Appellees attached the lease agreements to their complaint, and Ascent attached the same to its motion to compel and stay. The parties acknowledge the oil and gas leases, Addendums, and Amendments contain the same essential terms at

issue.  Consistent with their acknowledgment in this regard and the trial court's decision and analysis, we proceed on this basis and address the lease agreements collectively.

{¶25} The oil and gas lease between David E. Hennen and Regina L. Hennen (Lessors) and Mason Dixon Energy, Inc. (Lessee) is dated April 23, 2007.  It contains the disputed terms and is representative of the leases.  This agreement states it is an oil and gas lease between the Hennens, residents of Dillonvale, Ohio, and Mason Dixon, a Bridgeport, West Virginia company.  Ascent is the successor in interest to Mason Dixon. Among other things, the lease grants the Lessee the right to enter and produce oil and gas from the Hennens' land.  The lease includes the following terms.

2.  Term of Lease.  It is agreed that this lease shall remain in force for a term of five (5) year(s) from this date, and as long thereafter as oil or gas . . ., or either of them, is produced from said land by the Lessee, its successors and assigns.  Lessee has the option to extend this lease for an additional term of five (5) year(s) from the expiration of the primary term of this lease, and as long thereafter as oil or gas . . ., or either of them, is produced from the land by said Lessee, its successors and assigns, said extension to be under the same terms and conditions as contained in this lease.  Lessee, its successors or assigns, may exercise this option to extend if on or before the expiration date of the primary term of the lease, Lessee pays or tenders to the Lessor or to the Lessor's credit, an amount per net mineral acre equal to two (2) times the amount per net mineral acre paid to Lessor upon the execution of this lease.

. . .

4.  Delay Rental Payments.  If operations for drilling are not commenced on the leased premises, or on acreage pooled therewith as provided below, on or before twelve (12) months from this date, the lease shall then terminate as to both parties unless Lessee, on or before the expiration of said period, shall pay or tender to Lessor the sum of five and 00/100 ($5.00) Dollars per net mineral acre, herein after called the "delay rental," which shall extend for twelve (12) months the time within which drilling operations may be commenced. Thereafter, annually, in like manner

and upon like payments or tenders, the commencement of drilling operations may be further defined for periods of twelve (12) months each during the primary term. Drilling operations shall be deemed to commence when the first material is placed on the leased premises or when the first work, other than surveying or staking the location, is done thereon which is necessary for such operations.

{¶26} The leases were amended via an Addendum dated April 23, 2007. The Addendum states in the event of a conflict of terms between the original lease and the Addendum, the Addendum's terms control. The Addendum contains the following provisions:

33. Commencement of Operations: Commencement of operations shall be defined as Lessee having secured a drilling permit from the State and further entering upon the herein described premises with equipment necessary to build any access road(s) for drilling of a well subsequently followed by a drilling rig for the spudding of the well to be drilled, and the commencement and completion of the drilling of a well.

34. Arbitration: Any questions concerning this lease or performance there under shall be ascertained and determined by three disinterested arbitrators, one thereof to be appointed by Lessor, one by the Lessee and third by the two so appointed as aforesaid and the award of such collective group shall be final and conclusive. Arbitration proceedings hereunder shall be conducted at the county seat or the county where the Lease is filed or the action occurred which is the cause for the arbitration, or such other place as the parties to such arbitration shall all mutually agree upon. Each party will pay its own arbitrator and share the costs of the third arbitrator equally.

{¶27} The leases were extended for an additional five-year period and amended. The Hennens' lease Amendment was executed and dated April 3, 2014. It states the primary lease term was extended for five years until "April 22, 2017, at 11:59 p.m. Eastern Standard Time, and lessee may make annual delay rental payments . . . each year of said period to maintain the Lease in full force and effect." The Amendment also

states if there is a conflict between the Lease and the Amendment, the terms of the Amendment controls. The Amendment also includes the following terms.

NO AUTOMATIC FORFEITURE/CURE RIGHTS. *This lease shall continue in full force and effect so long as there is a well located on the Leased Premises, or a Unit created hereunder, that is producing or capable of producing oil or gas, or their constituents, in paying quantities and shall be construed against termination, forfeiture, cancelation and in favor of its continuation.* If Lessor believes that Lessee is in *default* under this Lease, no action shall be initiated for forfeiture, cancelation or damages until Lessee has received prior written notice from Lessor fully describing the *default* or other demand, and then only if Lessee (a) fails or refuses to satisfy or to provide reasonable justification for its act or omission in response to Lessor's demand within ninety (90) days from receipt of the notice or (b) fails to commence actions to remedy the *default* or to provide justification in response to Lessor's demands. If Lessee timely responds to Lessor's demand, but in good faith disagrees with Lessor's position and sets forth the reasons therefore, such a response shall be deemed to satisfy this provision, this lease shall continue in full force and effect and no further damages (or other claims, losses, liabilities, expenses and costs) will accrue in Lessor's favor during the pendency of the dispute, other than claims for payments that may be due under the terms of this Lease. If the matter is litigated and there is a final determination that a *default* has occurred, this Lease shall not be forfeited, expired, terminated or canceled, in whole or in part, unless Lessee is given a reasonable time, after said determination, to remedy the *default* and Lessee fails to remedy said default. Neither the service of any notice nor the doing of any acts by Lessee intended to satisfy any alleged default shall be deemed an admission or presumption that Lessee has failed to perform any obligations hereunder. If this lease is forfeited, expired, terminated or canceled for any cause, (i) it shall, nevertheless remain in full force and affect as to (A) sufficient acreage around each well to accommodate Lessor's operations, so as to constitute

a drilling or maximum allowable unit under applicable governmental regulations; such acreage to be to designated by Lessee in such shape as then existing spacing rules permit or if there are no governmental regulations then such acreage to be designated in good faith by Lessee in size and shape and (B) any part of said Leased Premises included in a Unit on which there are operations, and (ii) Lessor shall grant Lessee such easements on the Leased Premises as are necessary or convenient for operations on the acreage so retained.

(Emphasis added.)

{¶28} The lease agreements, Amendments, and Addendum do not contain a choice of law provision. Both parties acknowledge the FAA applies. The FAA states in part: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. 2.

{¶29} Both the FAA and Ohio's Arbitration Act favor arbitration agreements. *Sinley v. Safety Controls Technology, Inc.*, 2022-Ohio-4153, ¶ 14. Notwithstanding that favor, federal courts agree the language contained in an agreement governs and dictates whether arbitration may be compelled by one of the parties to the agreement. *Id*. at ¶ 15. When considering a motion to compel arbitration, courts must look to "whether the parties actually agreed to arbitrate the issue, . . . not the general policies of the arbitration statutes." *Id.* quoting *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, ¶ 20.

{¶30} Whether or not parties are bound to arbitrate, as well as what issues must be arbitrated, are matters to be determined by the court upon examining the applicable contract. *Local 377 Chauffeurs, Teamsters, Warehousemen & Helpers Union v. Shelly & Sands, Inc.*, 890 F.Supp.2d 827, 833 (N.D.Ohio 2012), citing *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 547 (1964).

{¶31} We review a trial court's decision whether to compel arbitration based on questions of law de novo. *KeyBank, N.A. v. David*, 2024-Ohio-5333, ¶ 15 (7th Dist.); *Local Union 97, Internatl. Bhd. of Electrical Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 112 (2d Cir. 2023).

{¶32} An oil and gas lease is a contract subject to the same rules of interpretation as other written agreements. *Shutway v. Chesapeake Exploration, LLC*, 2019-Ohio-1233, ¶ 27 (7th Dist.). The construction of contracts is a matter of law, which we review de novo and without regard to the trial court's holding. *Cent. Funding, Inc. v. CompuServe Interactive Servs., Inc.,* 2003-Ohio-5037, ¶ 42 (10th Dist.), citing *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. We must read the applicable contract in its entirety, give effect to each provision, and ascertain the intent of the parties from considering it as a whole. *Saunders v. Mortensen*, 2004-Ohio-24, ¶ 16 (6th Dist.). "Courts should attempt to harmonize provisions and words so that every word is given effect." *Christe v. GMS Mgt. Co.,* 124 Ohio App.3d 84, 88 (9th Dist.1997).

{¶33} When construing a contract, we must employ the plain meaning of the terms used, unless a manifestly absurd outcome results or if there is clear evidence of a different meaning when reviewing the agreement in total. *G.A.I. Capital Group LLC v. Lisowski*, 2023-Ohio-4802, ¶ 29 (7th Dist.), citing *Alexander* at 245.

{¶34} "To construe or interpret what is already plain is not interpretation" and is not our function when a writing is unambiguous. *Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Assn.*, 69 Ohio St.3d 521, 524 (1994), quoting *Iddings v. Bd. of Edn. of Jefferson Cty. School Dist.*, 155 Ohio St. 287, 290 (1951) (addressing statutory construction). Thus, absent an ambiguity, courts must apply a contract "as written and conduct no further investigation." *State v. Hurd*, 89 Ohio St.3d 616, citing *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 584 (1995) (addressing statutory language).

{¶35} As detailed in the statement of the case, Ascent moved to stay the trial court proceedings and compel arbitration. Appellees opposed and argued the arbitration clauses did not apply because the leases expired before the commencement of operations by Ascent. For the following reasons, we agree with Appellees.

{¶36} Both parties direct our attention to the United States Supreme Court's decision in *Litton Financial Printing Div., a Div. of Litton Business Systems, Inc. v. N.L.R.B.*, 501 U.S. 190, 209 (1991), as governing whether an arbitration clause is enforceable in this context. In *Litton,* there was a disagreement about whether the arbitration clause applied to grievances filed by certain employees who were laid off

almost one year after the agreement ended. The union filed grievances on the employees' behalf, and Litton refused to comply with the grievance and arbitration procedures.

{¶37} The court in *Litton* generally held that when a written agreement has expired, the presumption in favor of arbitrability only applies to disputes arising under the agreement. *Litton* stated: "The object of an arbitration clause is to implement a contract, not to transcend it." *Id*. at 205. To this end, the Supreme Court identified three exceptions or situations where a dispute will be found to "arise under" an expired agreement to arbitrate.

> A postexpiration [dispute] can be said to arise under the contract only [1] where it involves facts and occurrences that arose before expiration; [2] where an action taken after expiration infringes a right that accrued or vested under the agreement, or [3] where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

*Id*. at 205-206. The court found the layoff dispute was not arbitrable and explained: "the grievances are arbitrable only if they involve rights which accrued or vested under the Agreement, or rights which carried over after expiration of the Agreement, not as legally imposed terms and conditions of employment but as continuing obligations under the contract." *Id*. at 209.

{¶38} In *Clotz v. Mason Companies, Inc*., 2024 WL 977117 (N.D. Ohio March 5, 2024), the United States District Court for the Northern District of Ohio addressed whether a written arbitration clause applied under *Litton*. The plaintiff filed suit alleging violations of the Telephone Consumers Protection Act (TCPA). The plaintiff alleged he received multiple calls in relation to the debt of an unrelated individual. The company moved to compel arbitration, claiming Clotz had agreed to arbitration via a prior sales transaction. The court found the contract was invalid since Clotz never made any payments under the agreement and his order was canceled. *Id*. at *1.

{¶39} Upon applying *Litton*, *Clotz* found the agreement was unenforceable. The court also stated that even if it were a valid agreement, it was expired and the phone calls in question occurred after the life of the contract. Absent a survival clause, the right

to call the plaintiff under the agreement did not survive after the contract expired. *Id.* at *3.

**{¶40}** In *Stevens-Bratton v. TruGreen, Inc.*, 675 Fed.Appx. 563 (6th Cir. Tenn. 2017), the Sixth Circuit Court of Appeals applied *Litton* in another TCPA violation case. The plaintiff appealed the district's court's decision granting TruGreen's motion to compel arbitration. The court of appeals applied the language of the parties' expired contract for lawn care services. The court found the calls complained about occurred after the contract expired and determined the agreement did not contain a survival clause stating the right to call continued after the contract terminated. The court held the alleged TCPA violations did not "arise under" the lawn care service agreement. It reversed the district court's decision compelling arbitration. *Id*. at * 571.

**{¶41}** In *Local 377 Chauffeurs, Teamsters, Warehousemen & Helpers Union v. Shelly & Sands, Inc.*, 890 F.Supp.2d 827, 832 (N.D.Ohio 2012), the plaintiff alleged that although the parties' contract was terminated, they operated as if the contract had continued, and consequently, the agreement and its grievance process were still applicable. The court applied the language of the clause and found the contract did not state the clause governed a dispute about the duration of the contract. Further, the court found a majority of the facts and allegations in the case occurred after the termination of the parties' agreement. Thus, the court found the arbitration agreement inapplicable. *Id*. at 835.

**{¶42}** In *Treinish v. Borrowers First, Inc.*, 2017 WL 3971854 (N.D. Ohio Sept. 8, 2017), the United States District Court for the Northern District of Ohio applied the FAA and the *Litton* decision upon assessing whether to grant a motion to compel arbitration in another TCPA case. The plaintiff alleged the parties' agreement had been terminated because she defaulted on her loan and filed for bankruptcy. *Treinish* held the plain language of the agreement dictated that the arbitration clause survived and applied. The court granted the defendant's motion to compel arbitration. *Id*. at * 4. The arbitration clause at issue contained a survival clause, which stated: "[t]his Arbitration Provision shall survive (i) suspension, termination, revocation, closure, or amendments to this Agreement and the relationship of the parties and/or the Lender Parties; [and] (ii) the bankruptcy or insolvency of any party or other person." *Id.*

**{¶43}** Here, Appellees' complaint alleges Ascent trespassed and converted the Appellees' property by conducting drilling operations after the expiration of the parties' leases. Thus, although the parties had lease agreements governing their relationships and Ascent's right to drill for oil and gas, according to Appellees' complaint, the conduct at the center of this dispute is Ascent's activities after the expiration of the parties' agreements. It is undisputed the parties' relationships arose from their lease agreements. Yet, for the purpose of invoking the arbitration provisions, the dispute does not appear to involve the parties' continuing obligations under their leases after expiration.

**{¶44}** Moreover, the arbitration provisions here do not contain survival clauses— nothing in the lease agreements, Addendum, or Amendments states or suggests the parties agreed to arbitrate disputes concerning facts occurring after the agreements expired. Further, a plain reading of the agreements do not show the right to drill for oil and gas survived expiration of the leases. Instead, each of the lease agreements had been extended. And each set forth explicit end dates by which commencement of drilling was required to occur to avoid expiration.

**{¶45}** Notwithstanding, Ascent also argues the "No Automatic Forfeiture/ Cure Rights" clause applied and required Appellees to provide it with the opportunity to cure any potential breaches. We disagree since a plain reading of this clause shows otherwise. This clause states in part that the leases:

> shall continue in full force and effect *so long as there is a well located on the Leased Premises, or a Unit created hereunder, that is producing or capable of producing oil or gas*, or their constituents, *in paying quantities* and shall be construed against termination, forfeiture, cancelation and in favor of its continuation.

(Emphasis added.) By its very terms, this clause states there needs to be a well on the premises or a unit that is either producing or is capable of producing oil or gas in paying quantities for the clause to apply and the lease to continue. The addition or construction of a gas well, capable of producing in paying quantities, after the leases allegedly expired does not have the effect of extending the lease term.

Case No. 25 JE 0020

{¶46} To the extent Ascent now argues that the "No Automatic Forfeiture/ Cure Rights" clause also required Appellees to provide Ascent the opportunity to cure its alleged defaults under the leases, we disagree. Again, this clause states in part:

> If Lessor believes that Lessee is in *default* under this Lease, no action shall be initiated for forfeiture, cancelation or damages until Lessee has received prior written notice . . . . If Lessee timely responds to Lessor's demand, but in good faith disagrees with Lessor's position and sets forth the reasons therefore, such a response shall be deemed to satisfy this provision, this lease shall continue in full force and effect.

(Emphasis added.) An examination of the plain language used in this provision shows the right to cure, which Ascent is now relying on, applies when the lessee is in default.

{¶47} Default in this context is defined as the failure to perform or satisfy obligations outlined in the contract. DEFAULT, *Black's Law Dictionary* (12th ed. 2024). The expiration of a contract by its own terms is not a default. *Id.* Consequently, Ascent's reliance on the "No Automatic Forfeiture/ Cure Rights" provision is misplaced. We note, however, our analysis is limited to the initial inquiry as to whether the arbitration clauses apply.

{¶48} Ascent also asserts Appellees ratified the continuation of the agreements by accepting payments and not objecting to drilling activities after expiration. Ratification in the contract context is defined as one's "binding adoption of an act already completed but . . . not done in a way that originally produced a legal obligation." RATIFICATION, *Black's Law Dictionary* (12th ed. 2024). Thus, ratification applies when the original obligation was not binding for some reason. This argument goes to the merits of the underlying case, not arbitrability.

{¶49} In light of the facts present in this case and upon applying *Litton,* we agree with the trial court's decision denying the motion to compel and stay. Ascent's assigned error lacks merit.

{¶50} Moreover, we decline to address the parties' arguments about this court's decision in *French v. Ascent Resources-Utica, LLC*, 2023-Ohio-3228 (7th Dist.). Our decision in *French* was an appeal from the trial court's decision granting summary

judgment on declaratory judgment, not an appeal concerning a motion to compel arbitration.

**{¶51}** To the extent Appellees claim we can grant them judgment on the merits of their affirmative claims for relief at this juncture, we disagree.

**{¶52}** Ohio appellate courts have jurisdiction to address errors raised in a direct appeal from final orders of inferior courts within the district. Ohio Const., art. IV, § 3(B)(2). Because this is a direct appeal from the trial court's September 16, 2025 judgment denying Ascent's motion for stay and to compel arbitration, we are limited to arguments stemming from that judgment. App.R. 12(A). Further, we limit our review to issues actually decided by the trial court. *Lycan v. Cleveland*, 2016-Ohio-422, ¶ 21 (reversing the Eighth Appellate District's decision addressing res judicata on the merits for the first time on appeal); *Tree of Life Church v. Agnew,* 2014-Ohio-878, ¶ 27-28 (7th Dist.) (declining to consider the merits of summary judgment arguments not raised to the trial court); *Gonzales v. Perez*, 2015-Ohio-1282, ¶ 17 (7th Dist.) (declining to address argument raised for the first time on appeal).

**{¶53}** As stated, Ascent filed a motion to compel arbitration and stay the trial court proceedings in lieu of filing an answer. Appellees opposed. Ascent did not file an answer and thus has not yet had the opportunity to file a counterclaim. The parties did not conduct discovery, and there were no motions for summary judgment filed. In light of the arguments on appeal, we can infer Ascent will file a counterclaim. Thereafter, parties to a civil case ordinarily conduct discovery and have the opportunity to file motions for summary judgment.

**{¶54}** While we acknowledge the facts and arguments herein will likely overlap with those raised when this case is ultimately decided on the merits, via summary judgment or otherwise, a reviewing court rendering a decision on the merits at this juncture is premature and improper. *See* App.R. 12(A)(1)(a) and (b); *State v. Porter*, 2024-Ohio-903, ¶ 26-27 (7th Dist.), *appeal not allowed,* 2024-Ohio-2576; and *1803 Resources, LLC v. Lineback*, 2025-Ohio-3271, ¶ 168 (7th Dist.).

<u>Conclusion</u>

**{¶55}** Ascent's sole assignment of error lacks merit, and the trial court's judgment is affirmed.

<u>Case No. 25 JE 0020</u>

Waite, P.J., concurs.

Dickey, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**