OPINION
{¶ 1} Plaintiff-Appellant Cooper Tire Rubber Company ("Cooper Tire") appeals from the July 19, 2006 Judgment Entry entered by the Court of Common *Page 3 
Pleas of Hancock County, Ohio denying Cooper Tire's motion for summary judgment and granting Defendants-Appellees Warner Mechanical Corporation ("Warner"), Daniel James Insurance Agency, Inc. ("Daniel James"), and Heritage Mutual Insurance Company's ("Heritage") motions for summary judgment.
 {¶ 2} This case arises out of claims asserted against Cooper Tire by Arnulfo DeAnda ("DeAnda"), a pipe fitter employed by Warner, a piping contractor, following an accident that occurred in the North Side Millroom at Cooper Tire's Findlay, Ohio plant on April 1, 1990. (Case No. 1992-CV-58). DeAnda was injured when a pipe burst while he was conducting a leak pressure test on a portion of the piping system that Warner had contracted to install at the Cooper Tire facility.
 {¶ 3} When DeAnda initially filed his personal injury action multiple defendants were named, however Cooper Tire and Warner were not listed among them[1]. In 1992, DeAnda filed an amended complaint adding Cooper Tire as a Defendant and alleging that Cooper Tire was negligent. Cooper Tire then requested that Warner's liability insurer, Heritage, defend the action. Heritage refused coverage claiming that Cooper Tire was not an insured on Warner's policy and there was no coverage otherwise. This action followed. *Page 4 
 {¶ 4} The DeAnda litigation proceeded to a jury trial from February 2 through February 23, 1998. At the close of evidence, the jury returned with a verdict against Cooper Tire and in favor of DeAnda in the amount of $2.5 million.
 {¶ 5} Cooper Tire subsequently filed a motion for a new trial. In a Judgment Entry dated May 16, 2001 the trial court granted Cooper Tire's motion and vacated the verdict, holding that the jury's verdict was against the manifest weight of the evidence. On December 17, 2001 this court affirmed the trial court's order granting Cooper Tire's motion for a new trial. (See DeAnda v. Vanegas Ents-Corro-Flo Eng., Inc., 3rd Dist. No. 5-01-18, 2001-Ohio-2336). Thereafter, Cooper Tire and DeAnda reached a settlement of the claims against Cooper Tire, and the DeAnda action was dismissed with prejudice on January 14, 2004.
 {¶ 6} However, in March of 1999 each of the parties to the present action filed motions for summary judgment. Although numerous pretrial conferences were conducted and the parties attempted to mediate this case, settlement was not achieved. On July 19, 2006 the trial court entered a Judgment Entry denying Cooper Tire's motion for summary judgment, and granting the motions for summary judgment filed by Warner, Daniel-James, and Heritage.
 {¶ 7} Cooper Tire now appeals, asserting four assignments of error.
 ASSIGNMENT OF ERROR I THE TRIAL COURT REVERSIBLY ERRED IN HOLDING THAT R.C. 2305.31 RENDERS VOID COVERAGE OF AN OWNER AS AN ADDITIONAL INSURED UNDER A *Page 5 
 CONTRACTOR'S INSURANCE POLICY IF THE CLAIMED LIABILITY IS BASED ON THE OWNER'S ALLEGED NEGLIGENCE.
 ASSIGNMENT OF ERROR II THE TRIAL COURT REVERSIBLY ERRED IN HOLDING THAT THE LANGUAGE OF THE ADDITIONAL INSURED CLAUSE IN THE HERITAGE POLICY WOULD NOT HAVE COVERED DEANDA'S CLAIM AGAINST COOPER TIRE IF COOPER TIRE HAD BEEN NAMED AS AN ADDITIONAL INSURED.
 ASSIGNMENT OF ERROR III THE TRIAL COURT REVERSIBLY ERRED IN CONCLUDING THAT IF COOPER TIRE HAD BEEN NAMED AS AN ADDITIONAL INSURED HERITAGE WOULD NOT HAVE PROVIDED COVERAGE.
 ASSIGNMENT OF ERROR IV THE TRIAL COURT REVERSIBLY ERRED IN REJECTING COOPER TIRE'S CLAIM THAT HERITAGE BREACHED ITS DUTY TO DEFEND THE DEANDA ACTION.
 {¶ 8} An appellate court reviews a grant of summary judgment independently, without any deference to the trial court.Conley-Slowinski v. Superior Spinning Stamping Co. (1998),128 Ohio App.3d 360, 363, 714 N.E.2d 991. The standard of review for a grant of summary judgment is de novo. Hasenfratz v. Warnement 3rd
Dist. No. 1-06-03, 2006-Ohio-2797 citing Lorain Nat'l. Bank v. SaratogaApts. (1989), 61 Ohio App.3d 127, 572 N.E.2d 198. A grant of summary judgment will be affirmed only when the requirements of Civ.R.56(C) are met. This requires the moving party to establish: (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment *Page 6 
as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ.R.56(C); see Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus.
 {¶ 9} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." Mitseff v.Wheeler(1988), 38 Ohio St.3d 112, 116, 526 N.E.2d 798. The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. Dresher v.Burt(1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence on any issue which that party bears the burden of production at trial. See Civ.R.56(E).
 {¶ 10} Additionally, our review of the present case must apply the relevant rules of contract interpretation. The construction of written contracts is a matter of law, and courts will give common words in a written instrument their plain and ordinary meaning, unless an absurd result would follow or there is clear evidence of another meaning from the face or overall contents of the instrument. Alexander v. BuckeyePipe Line Co. (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraphs *Page 7 
one and two of the syllabus. In arriving at the meaning of any part of the contract, the instrument must be read in its entirety in order to give effect to the intention of the parties. Stocker Sitler, Inc. v.Metzger (1969), 19 Ohio App.2d 135, 142, 250 N.E.2d 269. When terms included in an existing contract are clear and unambiguous, an appellate court cannot create a new contract by finding intent not expressed in the clear and unambiguous language of the existing written contract.Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos. (1999),86 Ohio St.3d 270, 273, 714 N.E.2d 898.
 {¶ 11} Prior to reviewing Cooper Tire's assignments of error, we must first address the business relationship and general course of dealing between Cooper Tire and Warner.
 {¶ 12} Warner has worked as a piping contractor at Cooper Tire's Findlay plant for more than 30 years, and their business relationship has been extensive over the past several years. As a condition for entry onto its premises to engage in work, Cooper Tire states that it requires that all contractors, including Warner, meet certain requirements. These requirements are entitled "Regulations Governing Outside Contractors" ("Regulations") and require that "any party performing work on the premises of any Cooper Tire Rubber facility is required to fulfill and adhere to these Regulations." The Regulations also provide that "failure to fulfill and/or adhere to the . . . terms and conditions shall be grounds for *Page 8 
the immediate termination of the referenced purchase order and/or contract agreement at the option of Cooper Tire Rubber Company."
 {¶ 13} Additionally, the Regulations contain the following insurance requirements:
 A. Liability Insurance Requirements
 1. Certification of liability insurance coverage to be issued naming Cooper Tire Rubber and its owned or controlled companies, corporations, partnerships, or proprietorships as now or hereinafter constituted and/or Cooper Tire Rubber Company Employees' Trust as an additional insured.
 2. The amount of such liability coverage to be at least:
 a. Bodily Injury: $1,500,000 each person, $1,500,000 each aggregate
 b. Property Damage: $1,000,000 each occurrence.
 {¶ 14} Warner alleges that the Regulations under which Cooper Tire seeks to impose obligations upon Warner did not govern Warner's work on the project where DeAnda was injured. Warner also alleges that Cooper Tire waived and ratified Warner's not naming Cooper Tire as an additional insured by its own conduct and its course of dealing with Warner over a period of eight years.
 {¶ 15} Generally speaking, waiver is the voluntary relinquishment of a known right. State ex rel. Wallace v. State Med. Bd. of Ohio (2000),89 Ohio St.3d 431, 435, 732 N.E.2d 960; White Co. v. Canton Transp.Co. (1936), 131 Ohio St. 190, 2 N.E.2d 501, at paragraph one of the syllabus. A "waiver" can be found in a *Page 9 
great variety of circumstances. For example, "waiver by estoppel" exists when the acts and conduct of a party are inconsistent with an intent to claim a right, and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it. Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust
(2004), 156 Ohio App.3d 65, 92-93, 804 N.E.2d 979 citing Motz v.Root (1934), 53 Ohio App. 375, 4 N.E.2d 990.
 {¶ 16} We also note that the waiver of contractual rights typically requires consideration unless the actions of the party making the waiver are such that he must be estopped from insisting upon the right claimed to have been relinquished. Id. at 93 citing Marfield v. Cincinnati, D. T. Traction Co. (1924), 111 Ohio St. 139, 144 N.E. 689. A waiver may be enforced by anyone having a duty to perform, but who has changed his or her position as a result of the waiver. Chubb v. Ohio Bur. ofWorkers' Comp. (1998), 81 Ohio St.3d 275, 279, 690 N.E.2d 1267;Andrews v. Teachers Retirement System (1980), 62 Ohio St.2d 202, 205,404 N.E.2d 747.
 {¶ 17} In the present case, William Hattendorf, Treasurer of Cooper Tire, testified that Cooper Tire frequently hires contractors to come in and make improvements to its plants, and that the contractors are supposed to be insured. (Hattendorf Dep. p. 10). Hattendorf testified that as Treasurer, one of his job duties includes being involved with some monitoring of the [insurance] coverage *Page 10 
that contractors purchase. (Dep. p. 11). Specifically, Hattendorf testified that when Cooper Tire receives the certificates of insurance from contractors, "they eventually find their way to my office for filing mainly, and at that time we do a review of those certificates." (Dep. pp. 11-12). When asked what he looked for in reviewing the certificates of insurance, Hattendorf replied, "[w]e look at them and determine whether the coverages are in place for the appropriate time periods, that we are a certificate holder and that the certificate is complete." (Dep. p. 13).
 {¶ 18} Hattendorf also testified that a certificate of insurance is merely a notification that the contractor has insurance, and that Cooper Tire does not request or receive a full copy of the contractor's insurance policy. (Dep. p. 14). However, Hattendorf testified the contractors are required to have Cooper Tire listed as an added insured or additional insured. (Dep. p. 15). When asked what occurs if the certificates of insurance do not have Cooper Tire listed as an additional insured, Hattendorf replied "[generally we notify our engineering department or purchasing department, whoever was involved with the contractor to have the certificate amended." (Dep. p. 16).
 {¶ 19} The record reflects that Cooper Tire produced 57 separate purchase orders reflecting various jobs performed by Warner at Cooper Tire's Findlay plant between 1986 and 1990. (See Exhibit G attached to Hattendorf s deposition). However, Defendant's Exhibit H (as attached to Hattendorf s deposition) contains *Page 11 
a group of only 15 documents each titled "Cooper Tire Rubber Company Regulations Governing Outside Contractors" which were signed by Cooper Tire and Warner between 1987 and 1990. Taken together, it appears that although Warner had 57 separate purchase orders, Warner only executed the Regulations 15 times. Accordingly, it appears as if Cooper Tire did not uniformly require the "Additional Insured" insurance coverage in its course of dealing with Warner.
 {¶ 20} Furthermore, during this same general time period, Warner also provided Cooper Tire with certificates of insurance which were eventually reviewed by Hattendorf (See Exhibits B-1 through B-10, certificates of insurance provided by Cooper Tire to Warner from 1982 through April 1, 1990, attached to Hattendorf s deposition). Hattendorf testified that none of these certificates of insurance filed between 1982 and 1990 showed that Cooper Tire was an additional insured underany of Warner's insurance policies. (Emphasis added). Hattendorf also testified that two additional certificates from Warner, issued after April 1, 1990, did not name Cooper as an additional insured. (Dep. p. 73, Exhibits B-11 and B-12 attached to Hattendorf s deposition). Furthermore, Hattendorf testified that he did not remember reviewing a certificate of insurance from Warner that covered the particular job DeAnda was assigned to complete at the North Side Millroom, and that no Regulations were signed by Warner in conjunction with this job at the North Side Millroom. (Dep. pp. 18, 110). *Page 12 
 {¶ 21} Additionally, Gene Arnold, Vice President of Engineering for Cooper Tire, testified that the Regulations were not always imposed on a particular project. (Arnold Dep. pp. 81-82). When asked "[w]ho told you that you needed a Regulation Governing Outside Contractors or that you didn't need it?" Arnold testified that "[i]t was a judgment call on behalf of the engineer or the purchasing agent whether there was — whether the work was being performed or whether they were purchasing a piece of equipment." (Arnold Dep. p. 82). Arnold also testified that he was not aware of a copy of the Regulations being issued and signed by the parties regarding the job that Warner was doing when DeAnda was injured. (Arnold Dep. p. 20).
 {¶ 22} Our review of the record demonstrates that the Regulations attached to Cooper Tire's complaint (as Exhibit A) do not even reference the North Side Millroom where DeAnda was injured. Instead, at the top right corner of the first page of these Regulations, referenced as "contract number," it states: "Replacement of Bldgs. #14 and #26." Additionally, the very first sentence of these Regulations states as follows: "The following REGULATIONS GOVERNING OUTSIDE CONTRACTORS shall become a part of the above-referenced purchase order and/or contract as if fully rewritten therein." Subsection C of these Regulations states that "[i]n the performance of work under the above-referenced purchaseorder and/or contract, the contractor agrees to comply with *Page 13 
all applicable Federal State, or local laws, rules, regulations, or ordinances." (Emphasis added).
 {¶ 23} It is undisputed that DeAnda was not working in buildings #14 or #26 when injured, and was instead injured while working at the North Side Millroom; a different structure altogether than buildings #14 or #26. (See also Arnold Dep. pp. 41, 45-46, 62). Furthermore, we note that North Side Millroom project Warner had contracted for was governed by another, separate purchase order entered into between Cooper and Warner that does not impose any insurance requirements on Warner. (Arnold Dep. pp. 45-48, 65, referencing Exhibit C, Cooper Tire Purchase Order to Warner dated 11/16/89). This purchase order executed by Warner specifically for the North Side Millroom job does not contain any provision requiring any type of insurance. The second page of this purchase order also states that there are no other verbal agreements between Cooper Tire and Warner as purchaser and seller.
 {¶ 24} Based upon the foregoing, we find that the Regulations attached to Cooper Tire's complaint as Exhibit A did not obligate Warner to provide insurance coverage for Cooper Tire in connection with the work being performed by DeAnda at the North Side Millroom when he was injured. Additionally, we find that Cooper Tire's continued acceptance of certificates of insurance from Warner not naming Cooper Tire as an additional insured over a period of more *Page 14 
than eight years leading up to the present incident, established a course of dealing between Cooper Tire and Warner. Furthermore, we find that Cooper Tire is estopped from claiming Warner breached its contract with Cooper Tire due to its continued acceptance of the aforementioned certificates of insurance and purchase orders between Warner and Cooper Tire, and Cooper Tire's failure to monitor the contents of these documents to ensure compliance with its Regulations Governing Outside Contractors.
 {¶ 25} For these reasons, we find that the trial court did not err in granting summary judgment in favor of Warner Mechanical, Daniel-James Insurance Agency and Heritage Mutual Insurance Agency. Accordingly, we find that granting summary judgment in favor of Warner Mechanical, Daniel James Insurance Agency and Heritage Mutual Insurance Agency was proper, though not necessarily for the same reasons found by the trial court. Moreover, in reaching its decision to grant summary judgment, the trial court addressed a number of additional issues which we find are unnecessary to its decision. As Cooper Tire's assignments of error primarily advance specific arguments directed to the additional issues raised by the trial court and not toward the issues which form the basis of this court's decision, it is unnecessary for this court to address them further. *Page 15 
 {¶ 26} Accordingly, Plaintiff-Appellant Cooper Tire's assignments of error are overruled and the judgment of the Court of Common Pleas of Hancock County is affirmed.
Judgment affirmed.
 ROGERS, P.J., and WILLAMOWSKI, JJ., concur.
[1] Warner was not named in the DeAnda action and there has never been any allegation or claim made by DeAnda of any tortious conduct on the part of Warner. *Page 1