[Cite as *G.A.I. Capital Group v. Lisowski*, 2023-Ohio-4802.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

### G.A.I. CAPITAL GROUP LLC,

Plaintiff-Appellee,

v.

### EDWARD LISOWSKI et al.,

Defendants-Appellants.

---

### OPINION AND JUDGMENT ENTRY
### Case No. 23 MA 0052

---

Civil Appeal from the
Mahoning County Court No. 5 of Mahoning County, Ohio
Case No. 2022 CV F 00010

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed in part, Reversed in part, Remanded.

---

*Atty. Brian A. Coulter*, Brouse McDowell LPA, for Plaintiff-Appellee and

*Atty. Jeffrey A. Kurz*, for Defendants-Appellants.

Dated:  December 28, 2023

**Robb, J.**

**{¶1}** Appellants, Edward Lisowski, and Kimberly Lisowski and Concepts & Creativity, LLC, appeal the judgment granting Appellee, G.A.I. Capital Group, LLC, judgment and damages in the amount of $7,253.50 plus interest following a bench trial. Appellants raise nine assignments of error.

**{¶2}** For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

<u>Statement of the Facts and Case</u>

**{¶3}** Appellee filed suit in January of 2022 against Appellants Edward and Kimberly Lisowski individually and their limited liability company, Concepts & Creativity, LLC (hereafter C&C). Appellee purchased the building and acquired two leases listing Appellants as lessors. Appellants owned and operated a dance studio from the building until sometime in 2020.

**{¶4}** Appellee listed three causes of action: breach of contract, breach of guaranty, and unjust enrichment. Appellee claimed that after it purchased the building, Appellants failed to pay their monthly lease total of $2,100 for July through October of 2020. And after Appellants vacated the building, Appellee claims to have incurred damages to repair the interior and for trash removal. Attached to the complaint are Appellants' leases, marked as exhibits A and B.

**{¶5}** Appellants Edward Lisowski and Kimberly Lisowski filed separate answers, and Edward filed a cross-claim against Kimberly, his ex-wife. Appellants also filed separate summary judgment motions, which the trial court summarily overruled.

**{¶6}** The case was heard at a bench trial in February of 2023. Three witnesses testified at trial.

**{¶7}** Appellee's first witness was Attorney John McNally, counsel for Canfield Properties, LLC, the company that leased the premises to Appellants and sold the real property to Appellee. McNally did not draft the lease agreements, but authenticated the two leases at trial. The 2009 lease required a monthly payment of $607 and the 2008 lease required a monthly payment of $862.50.

**{¶8}** McNally likewise authenticated a ledger of amounts Appellants paid to Canfield Properties in 2020. The ledger reflects payments in the amount of $2,100 for January, February, March, April, and May. For the month of June 2020, the ledger indicates "free rent." And for July, the ledger reflects payments in the amount of $1,050. (Trial Tr. 14-19; Exhibit C.)

**{¶9}** The president of G.A.I. Capital Group, Terrill Vidale, also testified. He explained how his company, G.A.I., acquired the building and Appellants' leases from Canfield Properties. It consisted of nine rental units. He testified twice that Appellants occupied five units, units B,C, D, I, and O, with a collective total monthly rent of $2,100.

**{¶10}** G.A.I. was to first collect lease payments from Appellants beginning in July of 2020. Vidale dealt with both Edward and Kimberly regarding the property. Vidale said he never agreed to give Appellants free rent.

**{¶11}** Vidale testified that when he encountered Appellants, they kept promising to pay him but never did. Finally, he gave them a three-day notice to vacate, and they moved out. (Trial Tr. 79-80, 96.)

**{¶12}** He said Appellants were not prevented from cleaning out their rented units when they left. Vidale said he changed the locks at the end of October of 2020, but did not deny Appellants access to clean out their spaces. Vidale took photographs of the condition of the property when Appellants left. Appellee introduced his photographs of the damaged floor, walls, and discarded items left in the spaces. Because he is a commercial landlord, he usually takes photographs when a tenant leaves a property. Vidale paid $1,800 to have the units cleaned and repaired. (Trial Tr. 63-67.) On cross-examination, he said he did not remember whether the mirrors were still on the walls when Appellants vacated the units. He did not remove the mirrors, but he paid another individual to do it. The walls were damaged from where the mirrors were hung requiring resurfacing of drywall. (85-87.)

**{¶13}** Janice Semple was the sole defense witness to testify. She was C&C's office manager and is Kimberly's mother. Semple was not present when any of the leases were agreed upon or executed. She described Edward as not being active in the day-to-day business operations. She explained how he mostly helped Kimberly when something needed repaired or for maintenance. (Trial Tr. 103-105; 119.)

{¶14} Semple was present during an August 2020 meeting between Kimberly, Edward, and Vidale. During this meeting, Vidale expressed concerns that Appellants had not yet re-signed their lease. She recalls he was also asking for rent payments at this meeting.

{¶15} According to Semple, Kimberly refused to sign a new lease because her number of students had significantly reduced due to Covid-19. Semple stated Kimberly volunteered to leave the space, but Vidale indicated he did not want an empty building. Semple stated: "[Vidale] did not want the building empty. He was afraid the banks were going to come back on him because he - - he said he had a million dollar loan with the bank * * *." When Semple was asked about whether he told Appellants *not* to pay rent, she said, "He said not to worry about it." (Trial Tr. 103.)

{¶16} Semple explained on cross-examination that the dance company was not actually using the space during these last few months because of Covid-19, but they did keep their dance studio property there. The dance classes were being held outside and at another location because of the pandemic. They had very low enrollment numbers. (Trial Tr. 128-129.)

{¶17} C&C vacated the premises on October 30, 2020. Semple agreed the photos of the units accurately depicted the condition of the premises when they left. They intended to return to remove trash, but according to Kimberly, Vidale had changed the locks. They left mirrors hanging on the walls and a pile of trash. Semple said that they did not contact Vidale in order to gain access and finish their clean up. She stated, "[w]hen you're told you have to stay away that's what you do." (Trial Tr. 110-117.)

{¶18} No party or individual who was present when either lease agreement was negotiated or executed testified at trial.

{¶19} The parties submitted proposed findings of fact and conclusions of law, and the trial court issued judgment in Appellee's favor on March 17, 2023. The court rejected Appellants' statute of conveyances and statute of frauds arguments. It explained the leases were for a term of less than three years, and the leases were validated via the parties' partial performance since Appellants had occupied the space and paid rent for more than a decade.

**{¶20}** The trial court found there was no ambiguity in either lease agreement and that the "Tenant" as defined in both included the limited liability company and its members. The court stated in part: "the Court holds that all Defendants are parties to both Lease Agreements and that they are jointly and severally liable for Plaintiff's damages. The plain language of the Lease Agreements defines the Tenant as, 'Concepts & Creativity LLC Members dba Dance Studio.' This description, although unusual, is plain, ordinary language." (March 17, 2023 Judgment). And upon assigning meaning to all words in the contract, the court found the word "Members" in the "Tenant" definition made the members, Kimberly and Edward, personally liable, in addition to the company. (March 17, 2023 Judgment).

**{¶21}** The trial court found Kimberly personally guaranteed both leases, whereas Edward only personally guaranteed the second lease agreement. It found Appellants had breached the lease agreements and awarded damages to Appellee in the amount of $7,253.50 against all Appellants joint and several, i.e., C&C, Edward, and Kimberly. It further concluded there was no just reason for delay. (March 17, 2023 Judgment). Appellants collectively appealed the court's judgment.

**{¶22}** The trial court granted Appellants' requested stay of its judgment pending appeal.

## Personal Liability for Lease Agreements

**{¶23}** Appellants consolidate their first three assigned errors, which assert:

"The trial court erred when it: (I) Found the leases to be unambiguous and interpreted the lease terms in a light most favorable to the drafter instead of the non-drafting party; (II) Found Kim Lisowski personally liable on the 1st lease as a lessee and guarantor; and (III) Found Kim and Ed Lisowski both personally liable on the 2nd lease a lessees and guarantors."

**{¶24}** Appellants first contend the lease agreements are ambiguous as to who the "tenant" or "lessor" is, and thus, they assert both leases should be construed against Appellee. Appellants claim that both leases are only binding on their company, and not Edward and Kimberly individually.

**{¶25}** Second, Appellants claim the guarantee set forth in paragraph 22 of both leases is not binding in light of the manner that Edward and Kimberly signed the contract

as "members" of the LLC, not in their individual capacities. Consequently, Appellants claim the court erred by finding their signatures, in which they indicate they were signing in a representative capacity, also bound them as personally guaranteeing the leases. Appellants claim the trial court's judgment finding them personally responsible must be reversed. For the following reasons, we disagree.

{¶26} This appeal concerns two agreements by which Appellants leased certain units in a building owned by Appellee. For the most part, the lease agreements are the same and arise from the same form agreement. Each agreement leases certain units in the same building to Appellants.

{¶27} There is no dispute about the property Appellants rented or the authenticity of the two lease agreements introduced at trial. Appellants do not challenge the court's breach of contract conclusion—they dispute who the tenant is under each lease and who is responsible for the breach.

{¶28} The construction of contracts is a matter of law, which we review de novo and without regard to the trial court's holding. *Cent. Funding, Inc. v. CompuServe Interactive Servs., Inc.,* 10th Dist. No. 02AP-972, 2003-Ohio-5037, ¶ 42, citing *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus. We must read the applicable contract in its entirety, give effect to each provision, and ascertain the intent of the parties from considering it as a whole. *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 16. "Courts should attempt to harmonize provisions and words so that every word is given effect." *Christe v. GMS Mgt. Co.,* 124 Ohio App.3d 84, 88, 705 N.E.2d 691 (9th Dist.1997).

> When construing a contract, a court's principle objective is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.,* 86 Ohio St.3d 270, 273, 1999 Ohio 162, 714 N.E.2d 898 (1999). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.,* 31 Ohio St.3d 130, 31 Ohio B.R. 289, 509 N.E.2d 411 (1987), paragraph one of the syllabus. Thus, where the terms of a contract are clear and unambiguous, a court cannot look beyond the plain language of the agreement to determine the rights and obligations of the parties. *Cocca*

*Dev.,* 7th Dist. No. 08MA163, 2010-Ohio-3166, at ¶ 26, citing *Aultman Hospital Ass'n v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). However, if a contract is reasonably susceptible to more than one meaning, then it is ambiguous and extrinsic evidence of reasonableness or intent can be employed. *Id.,* citing *City of Steubenville v. Jefferson Cty.,* 7th Dist. No. 07JE51, 2008-Ohio-5053, ¶ 22.

*7 Med. Sys., LLC v. Open MRI of Steubenville,* 7th Dist. Jefferson No. 11 JE 23, 2012-Ohio-3009, ¶ 27.

**{¶29}** When construing a contract, we must employ the plain meaning of the terms used, unless a manifestly absurd outcome results or if there is clear evidence of a different meaning when reviewing the agreement in total. *Alexander v. Buckeye Pipeline Co.,* 53 Ohio St.2d 241, 245, 374 N.E.2d 146 (1978); *Cooper Tire & Rubber Co. v. Warner Mechanical Corp.,* 3d Dist. Hancock No. 5-06-39, 2007-Ohio-1357, ¶ 10.

**{¶30}** Furthermore, courts review guarantee agreements like any other contract, which are governed by the plain language of the terms used in the writing. *O'Brien v. Ravenswood Apartments, Ltd.*, 169 Ohio App. 3d 233, 240-241, 862 N.E. 2d 549 (2006), citing *Stone v. Natl. City Bank*, 106 Ohio App.3d 212, 217, 665 N.E.2d 746 (8th Dist.1995), *cause dismissed,* 74 Ohio St.3d 1495, 658 N.E.2d 1064 (1996).

**{¶31}** "To construe or interpret what is already plain is not interpretation" and is not our function when a writing is unambiguous. *Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Assn.*, 69 Ohio St.3d 521, 524, 634 N.E.2d 611 (1994), quoting *Iddings v. Bd. of Edn. of Jefferson Cty. School Dist.*, 155 Ohio St. 287, 290, 98 N.E.2d 827 (1951) (addressing statutory construction). Absent an ambiguity, courts must apply a guarantee or contract "as written and conduct no further investigation." *State v. Hurd*, 89 Ohio St.3d 616, 2000-Ohio-2, 734 N.E.2d 365, citing *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 584, 651 N.E.2d 995 (1995) (addressing statutory language).

**{¶32}** The first lease dated September 1, 2008, concerns 1150 square feet of space referred to as Suite 0, and requires the payment of $862.50 per month. (Exhibit A.)

**{¶33}** The second lease dated September 1, 2009, concerns 1120 square feet of space referred to as Suites B, C, and D, and requires the payment of $607 per month

(Exhibit B.)  The written lease agreements only reference four units.  Notwithstanding, Vidale testified Appellants were renting five total units, i.e., units B, C, D, I, and O.  Both leases state at the top of the first page:

LEASE AGREEMENT

This Agreement made and entered into this * * * day * * * by and between Canfield Properties hereinafter referred to as "Landlord" and Concepts & Creativity LLC Members dba Dance Studio, hereinafter referred to as "Tenant".

**{¶34}**  Paragraph 16, titled "Notices" on the second page of both lease agreements states where notices and demands are to be mailed regarding the lease agreements.  This paragraph states in part that any notices or demands "shall be mailed" and addressed as follows:  "TENANT:  Kim & Ed Lisowski/ Concepts & Creativity LLC Members."

**{¶35}**  Both lease agreements also contain the same paragraph 22 on page three, which states:

**"22. Personal Guarantee.**  I  Kim & Ed Lisowski  in order to induce the

lessor to enter in to the above lease agreement hereby personally guaranty

the performance of the obligation of lessee describe[d] there in. [sic.]"

(Emphasis sic.)  (Exhibits A & B.)

**{¶36}**  As for signatures, the 2008 lease agreement, Exhibit A, was signed by the landlord's representative and under the tenant's line it states:

TENANT

Mr. & Mrs.

dba *Concepts & Creativity, LLC*

BY: *Member, Kimberly Lisowski*

(Exhibit A.)  The italicized and underlined portion of the above is handwritten in cursive, whereas the other words are typewritten.  The 2008 lease was not signed by Edward Lisowski.

**{¶37}**  The signature lines for the 2009 lease states:

"TENANT

Mr. & Mrs.

dba

BY: *Kimberly Lisowski*

"TITLE: *member*"

**{¶38}** The 2009 lease was also signed "Edward Lisowski, Member" at the bottom left-side of the same page across from where Kimberly signed. The date next to Kimberly's signature is handwritten as 8-30-09, and the date next to Edward's signature is handwritten as 8-31-09. (Exhibit B.)

**{¶39}** Both agreements have the terms "Mr. & Mrs." preprinted in the signature block and neither Edward nor Kimberly signed in this area. (Exhibits A & B.)

**{¶40}** As stated, Appellants contend the foregoing contractual language is ambiguous and requires extrinsic evidence to ascertain the parties' intent. Appellee counters the same is unambiguous and should be applied as written.

**{¶41}** A plain reading of the agreements shows the tenant for each lease is identified as the *members* of the limited liability company. Both leases state "Concepts & Creativity LLC Members dba Dance Studio, hereinafter referred to as 'Tenant'."

**{¶42}** "'Member' means a person that has been admitted as a member of a limited liability company under section 1706.27 of the Revised Code and that has not dissociated as a member." R.C. 1706.01. Members of a limited liability company are not generally responsible for the agreements or debts of the limited liability company to which they are a member. R.C. 1706.26. However, this general rule does not apply when the plain language of a contract binds the members individually.

> "An officer of a corporation is not personally liable on contracts * * * for which his corporate principal is liable, unless he intentionally or inadvertently binds himself as an individual." *Centennial Ins. Co. Of New York v. Vic Tanny Internat'l. Of Toledo, Inc.* (1975), 46 Ohio App.2d 137, 142; *Spicer v. James* (1985), 21 Ohio App.3d 222; *Hommel v. Micco* (1991), 76 Ohio App.3d 690, 697; and *Heritage Funding & Leasing Co. v. Phee* (1997), 120 Ohio App.3d 422. Whether or not a corporate officer can be held personally liable depends upon "the form of the promise and the form of the signature." *Spicer, supra* at 223. If there is a question as to whether or not a person signed a contract in an individual or corporate capacity, parol evidence is

admissible to show representative capacity. *Wise v. Duker* (1988), 57 Ohio
App.3d 62, 63.

*Michael Benza & Assoc. v. Joh-Mar Co.*, 8th Dist. Cuyahoga No. 73875, 1999 WL 13987,
*2.

**{¶43}** Upon reviewing the agreements as a whole and when giving all the lease terms meaning, we conclude the lease agreements as written are not ambiguous and there is "no question" as to what capacity Appellants signed them.

**{¶44}** Both leases make it clear the *members* of the limited liability company, not C&C, are the tenant. This is the only reasonable conclusion upon reading the definition of "Tenant" and the agreement in its entirety. "Tenant" is defined as "Concepts & Creativity LLC Members dba Dance Studio * * *." There is no comma or "and" between the terms "LLC" and "Members". The leases do not identify the company as the tenant, but states the company's members are the tenants.

**{¶45}** Further, there are additional references throughout the agreements where the term "Tenant" is written. Each is accompanied by the names of the individual members, i.e., Edward and Kimberly Lisowski. Thus, we conclude the tenant consists of only the *members* of the LLC—not the LLC *and* its members.

**{¶46}** This conclusion is also bolstered by the personal guarantee clause in paragraph 22 of both versions of the lease.

**{¶47}** "If a person can read and is not prevented from reading what he signs, he alone is responsible for his omission to read what he signs." *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 14, 552 N.E.2d 207 (1990). Parties to an agreement have an obligation to read what they are signing. *See E. Liverpool v. Owners Ins. Co.*, 2021-Ohio-1474, 171 N.E.3d 1207, ¶ 69 (7th Dist.), *appeal not allowed sub nom. Liverpool v. Owners Ins. Co.*, 165 Ohio St.3d 1424, 2021-Ohio-3730, 175 N.E.3d 571.

**{¶48}** If Appellants' intent was not to be personally bound, then they should have crossed out certain provisions or asked to change the lease terms. Alternatively, they could have looked elsewhere for a different space to rent. Naming the LLC members as the tenant is not customary, but this is what the plain language of the leases state. It is not our function to rewrite the lease terms to what we think the parties meant. Instead, we must apply it as written.

Case No. 23 MA 0052

**{¶49}** As for Appellants' second argument, we disagree that the manner in which Edward and Kimberly signed the contracts dictates their responsibility under the lease agreements. While the way they signed is relevant, it does not override the otherwise clear contract language defining "Tenant" as the LLC *members* and stating Edward and Kimberly were personally guaranteeing the obligations of the lessee. Thus, this argument lacks merit.

**{¶50}** It is possible Edward and Kimberly inadvertently bound themselves based on their failure to read what they were signing or failure to secure counsel to review the agreements. Regardless of the reason, this court must enforce the agreements as written consistent with the plain language. Upon doing so, we find Kimberly personally responsible for all outstanding lease payments due under both leases and Edward liable for the lease payments associated with the second lease dated September 1, 2009, regarding Suites B, D, and E, joint and several with Kimberly.

**{¶51}** Thus, Appellants' arguments, listed as their first three assigned errors, lack merit.

**{¶52}** However, to the extent the trial court found C&C responsible for the judgment, we disagree. Further, to the extent the trial court found Edward responsible for the rent associated with the lease signed in the year 2008 we likewise disagree. As is further detailed under assignment of error number four, we do not find Edward responsible for damages arising from the lease agreement that he did not sign.

**{¶53}** However, because the damage award is not readily divisible based on the record, we remand for the limited purpose of determining which part of the judgment is joint and several and flowing from the 2009 lease, and which part of the judgment arises from the 2008 lease, such that it is Kimberly's sole responsibility.

Statute of Frauds and the Statute of Conveyances

**{¶54}** Appellants' fourth assignment contends:

"The trial court erred when it found that the Statute of Frauds and the Statute of Conveyances did not preclude the enforceability of the leases against Kim and Ed Lisowski."

**{¶55}** Appellants assert the lease agreements are unenforceable since both violate the statute of frauds and statute of conveyances.

**{¶56}** The statute of conveyances requires all leases lasting three years or more to be acknowledged and witnessed by an official, such as a notary public. R.C. 5301.01(A); R.C. 5301.08. Both lease agreements here were for a term of 2.5 years, and thus, the statute of conveyances is inapplicable. *Id.*

**{¶57}** Further, once the 2.5-year lease terms expired, the leases became month-to-month leases. *See generally Baer v. Hendren*, 2017-Ohio-6933, 94 N.E.3d 1156, ¶ 18 (3rd Dist.) (when a lease is deemed invalid and requires monthly payments, it creates a tenancy from month to month); *Wineburgh v. Toledo Corporation*, 125 Ohio St. 219, 222, 181 N.E. 20 (1932); *Burger v. Buck*, 11th Dist. Portage No. 2008-P-0041, 2008-Ohio-6061, ¶ 39. Thus, we find no violation of the statute of conveyances and conclude this aspect of Appellants' fourth assigned error lacks merit.

**{¶58}** Appellants additionally contend that neither lease agreement is enforceable against them because Kimberly signed only in her representative capacity and Edward only signed one of the two agreements, also indicating he was signing as a member and in his representative capacity. Further, Appellants aver the only lease Edward signed shows he signed the lease as a witness. Thus, they claim the statute of frauds invalidates both agreements. We disagree in part.

**{¶59}** Ohio's statute of frauds is codified in Chapter 1335 of the Ohio Revised Code. The statute of frauds requires certain contracts to be in writing.

**{¶60}** R.C. 1335.04 provides: "No lease * * * shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law."

**{¶61}** R.C. 1335.05 states in part, "[n]o action shall be brought * * * upon a contract or sale of lands * * * or interest in or concerning them * * * unless the agreement upon which such action is brought * * * is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."

**{¶62}** "Agreements that do not comply with the statute of frauds are unenforceable." *Qutifan v. Shafiq*, 2016-Ohio-4555, 70 N.E.3d 43, ¶ 13 (10th Dist.), citing *Hummel v. Hummel*, 133 Ohio St. 520, 14 N.E.2d 923 (1938). The purpose of the statute of frauds is to ensure that transfers of real property are reliable and to discourage

fraudulent claims. *N. Coast Cookies, Inc. v. Sweet Temptations, Inc.*, 16 Ohio App.3d 342, 348, 476 N.E.2d 388 (8th Dist.1984).

**{¶63}** A review of the lease agreements signed by Edward and Kimberly shows both define the tenants as "Concepts & Creativity LLC *Members* dba Dance Studio, hereinafter referred to as 'Tenant'." (Emphasis added.) Thereafter, both lease agreements state they are personally guaranteed by Edward and Kimberly Lisowski. Both leases additionally identify Edward and Kimberly Lisowski as contacts when identifying tenants for official notices and demands regarding the contract.

**{¶64}** The fact that Edward signed the lease on the third blank space under the heading for "Witnesses" does not invalidate his contractual obligations or make his signature invalid. To the contrary, it appears likely that the lines under the term "Tenant" had evidently already been used by Kimberly when signing the lease. And Edward signed on the blank line across from her signature on the left-hand-side of the page, albeit under the Witness heading, a day later. Further, there are two lines for witnesses above his signature and under the Witness heading which remain blank.

**{¶65}** Consequently, the manner or the way in which Edward signed his name does not invalidate the plain language of the contract.

**{¶66}** The same also applies to Kimberly. While her signature indicates she was signing as a member of C&C, her signature is consistent with the way the word Tenant is defined in the lease agreements.

**{¶67}** Notwithstanding, Appellants' argument about the statute of frauds has merit in part. Edward should not be found a party to and responsible for the 2008 lease that names him as a party, but which he did not sign. We are not invalidating this lease, but finding it is unenforceable against Edward since he did not sign it. Thus, this assigned error has merit in part.

Trial Court Interference

**{¶68}** Appellants' fifth alleged error claims:

"The trial court abused its discretion when it improperly interfered with defense counsel's cross examination and precluded Defendants from introducing relevant evidence of Terrill Vidale's motives, actions and statements."

Case No. 23 MA 0052

{¶69} Appellants claim the trial court's behavior during trial was an abuse of discretion and caused their case to fail on the merits. They claim the trial court improperly precluded defense from cross-examining Vidale based on its interjections and independent questioning of the witness mid-trial when there were no objections. Appellee argues the court's conduct was reasonable case flow control.

{¶70} Evid.R. 614 states in part:

(B) Interrogation by Court. The court may interrogate witnesses, in an impartial manner, whether called by itself or by a party.

(C) Objections. Objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present.

{¶71} Appellants did not object to the court's questioning about which they now claim was error. Thus, they waived all but plain error, which may only be recognized in extremely rare instances when the error seriously affects the basic fairness, integrity, reputation, or legitimacy of the judicial process. *Vermeer of S. Ohio, Inc. v. Argo Constr. Co.*, 144 Ohio App.3d 271, 275, 760 N.E.2d 1 (2001)*.*

{¶72} Further, the trial court has discretion to control the flow of the trial. Evid.R. 611(A), "Control by Court" states:

The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

{¶73} Courts are afforded greater flexibility when questioning witnesses during bench trials since there is no jury to be influenced by the judge's demeanor. *State v. Skerkavich*, 8th Dist. Cuyahoga No. 105455, 2019-Ohio-4973, 149 N.E.3d 1120, ¶ 16. Further, a trial court's interrogation of a witness is not necessarily improper or one-sided because it elicits evidence that is damaging to one of the parties. *Henry v. Richardson*, 12th Dist. Butler No. CA2010-05-110, 193 Ohio App.3d 375, 2011-Ohio-2098, 951 N.E.2d 1123, ¶ 24.

**{¶74}** Here, Appellants claim they were prevented from eliciting testimony about Vidale's alleged motive to lie. They claim the court's interruption of their cross-examination of Vidale did not allow them to secure essential testimony about his allegedly false statements in his bank loans. Appellants claim he had motive to lie and retract his alleged promises to allow them to remain in the building rent free.

**{¶75}** Appellants' cross-examination of Vidale included the following exchange:

Q  * * * Did you take out a loan to buy this property?

A  Yes.

Q  And you took that loan out from a banking institution; right?

A  Correct.

Q  And as part of that you had to make representations to them as to what rent you were receiving; is that right?

A  A rent (indiscernible); correct.

Q  Right. So if you were to not be receiving rent for a space then that would be a misrepresentation you would have made at the time of the application for a loan; right?

THE COURT:  Wow. Not even an issue right now.

THE WITNESS:  Yeah, I'm -- where is this going?

* * *

THE COURT:  I'm sorry?

MR. KURZ:  It goes to motive, Judge.

THE COURT:  Motive for what, Attorney Kurz?

MR. KURZ:  For making a representation that there was rent to be paid when it wasn't.

THE COURT:  To a party that is not here on a mortgage that is not in issue with evidence that I don't have before me. So I'm not sure how that's helpful.

(Trial Tr. 70-71.)

**{¶76}** Appellants claimed they were prevented from showing Vidale had a motive to lie about a promise to give them free rent, which allegedly contradicted assurances made in loan documents. Appellants assert they were prevented from presenting evidence about this alleged motive. We disagree.

Case No. 23 MA 0052

**{¶77}** Although the trial court seemed to interject its disapproval of this question and its relevance, it still allowed counsel to explain what he was seeking to establish. Thereafter, the court did not prevent him from introducing evidence or eliciting testimony in any manner. Further, there was no jury to be impacted by the court's commentary. Thus, they fail to establish plain error. Accordingly, this assigned error is overruled.

<u>Damages Testimony</u>

**{¶78}** Appellants' sixth assignment of error claims:

"The trial court abused its discretion when it permitted Plaintiff to introduce inadmissible hearsay to prove damages for repairs and trash removal."

**{¶79}** Appellants generally challenge the court's basis for its damage award. Damages for a breach of contract should place the injured party in as good a position as it would have been in but for the breach. These "expectation damages" are limited to the plaintiff's actual loss, which the plaintiff must establish with reasonable certainty. *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 144, 684 N.E.2d 1261 (9th Dist.1996), citing *Doner v. Snapp*, 98 Ohio App.3d 597, 601, 649 N.E.2d 42 (1994).

**{¶80}** Appellants claim the court erred by allowing the introduction of an exhibit into evidence showing the amount Appellee paid to clean and restore the property. They claim Vidale should not have been allowed to testify as to what work was done since he neither performed the work, nor was he present when it was performed. Thus, they claim his testimony is hearsay. We disagree.

**{¶81}** Trial courts generally have broad discretion in the admission of evidence, which we review for an abuse of discretion. *State v. Jordan,* 10th Dist. Franklin No. 06AP-96, 2006-Ohio-6224, ¶ 19.

**{¶82}** Contrary to Appellants' argument, Vidale testified that he personally hired someone to clean out the units and repair the drywall. He paid them $1,800, which is the amount reflected in Exhibit D. (Trial Tr. 65-66.) Thus, this is not an out of court statement offered for the truth of the matter of asserted, but in court testimony by an individual with knowledge as to what his company paid. Thus, this was not hearsay. Evid.R. 801(C).

**{¶83}** As for the alleged work done to repair the damaged drywall and trash removal, Appellee introduced photographs depicting the condition of the units after Appellants vacated the premises. Vidale testified he took the photographs and they

accurately depicted the property's condition, including the trash and furniture left behind. (Trial Tr. 59-62; Exhibit D.) While he did not recall whether the mirrors were still hanging at the time Appellants vacated the premises, this does not preclude his recovery of this aspect of his claim. It is reasonable to conclude that the removal of the mirrors was warranted before Vidale rented the space to another.

**{¶84}** Furthermore, the only evidence to the contrary, was Semple's testimony. She testified that when Appellants vacated the property, the mirrors were still adhered to the walls, but she confirmed the photographs did otherwise depict the units in the condition when Appellants vacated the property. Further, when she reviewed one of the photographs in Exhibit D, Semple opined it did not depict damage to the drywall. Instead, she claimed the walls only needed painted, not drywall repair work. (Trial Tr. 117, 125-126.)

**{¶85}** The foregoing testimony and evidence about the damage was before the court for it to consider when determining its damage award. Based on the record, we find no error. Accordingly, this assigned error lacks merit.

Seventh, Eighth, & Ninth Assignments of Error

**{¶86}** Appellants' seventh assigned error contends:

"The court's decision was in error as it was against the manifest weight of the evidence."

**{¶87}** Appellants' combined assignments of error eight and nine assert:

"The trial court erred and abused its discretion when it (VIII) granted damages for normal wear and tear; and (IX) failed to apply Defendants' deposits against the award of damages."

**{¶88}** Because Appellants' arguments in these assignments overlap, we address them collectively.

**{¶89}** Appellants first assert there were no witnesses to testify who were present when the leases were signed about the contract ambiguity, and as such, the court's decision is against the weight of the evidence. However, because we find the lease unambiguous, this contention is of no consequence since the plain language of the lease agreements dictates the outcome.

{¶90} Next, Appellants claim Attorney McNally's testimony about the contract and his interpretation of it is correct. Again, however, procuring the plain meaning of a written instrument is a question of law for the court to decide. *Alexander v. Buckeye Pipeline Co.,* 53 Ohio St.2d 241, 245, 374 N.E.2d 146 (1978). Thus, his opinion about the validity of the leases or in what capacity Appellants signed the agreements, has no impact on our decision. *Id.*

{¶91} Appellants also claim error based on alleged inconsistent allegations in Appellee's complaint versus what was established at trial. Specifically, Appellants assert Appellee's damages should not be allowed to exceed those claimed in Appellee's complaint. They also raise a factual discrepancy about the name of Unit 0, which was later identified as Unit N.

{¶92} A plaintiff's complaint must generally plead sufficient operative facts to support recovery for his or her claims. *Tuleta v. Med. Mut. of Ohio*, 8th Dist. Cuyahoga No. 100050, 2014-Ohio-396, 6 N.E.3d 106, ¶ 12. A general averment about the damages does not preclude more specific trial testimony.

{¶93} Regarding the amount of cleanup costs associated with Appellants' units, Appellee's complaint alleges it incurred "approximately $1,000" for cleaning and other costs to remediate the units. This allegation was in the complaint and is consistent with the evidence offered at trial. Further, the discrepancy about the name of the rental unit was raised at trial, adequately explained, and the court found the issue was of no consequence. These arguments lack merit.

{¶94} Appellants next claim the court erred by awarding normal wear and tear damages under the lease agreements. This issue was not raised during trial, there is no evidence or argument on the issue, and it is therefore waived. *Quick v. Jenkins*, 7th Dist. Columbiana No. 13 CO 4, 2013-Ohio-4371, ¶ 27, citing *Litva v. Richmond,* 172 Ohio App.3d 349, 2007-Ohio-3499, 874 N.E.2d 1243, ¶ 18 (7th Dist.). Notwithstanding, Vidale testified he paid someone $1,800 to clean Appellants' unit, and Appellee introduced photographs depicting garbage left behind and damaged drywall. Thus, this argument lacks merit.

{¶95} Appellants also claim the court failed to apply the deposits under both lease agreements. We disagree. The trial court deducted the amount of both deposits when

calculating Appellee's damage award in the Damages section of its decision. (March 17, 2023 Judgment.) Thus, this argument lacks merit.

**{¶96}** Finally, Appellants complain the trial court erred by awarding Appellee $2,100 per month in damages when the rent indicated in the lease agreements do not equal that amount. Instead, the monthly total is $1,459.50 when adding the amounts in the two lease agreements.

**{¶97}** "[J]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus." *Dugan & Meyers Constr. Co. v. Ohio Dept. of Adm. Servs.*, 10th Dist. No. 03AP-1194, 162 Ohio App.3d 491, 2005-Ohio-3810, 834 N.E.2d 1, ¶ 49, *aff'd,* 113 Ohio St.3d 226, 2007-Ohio-1687, 864 N.E.2d 68.

**{¶98}** The trial court's judgment under "UNDISPUTED FACTS * * * d. Damages" states: "The parties agree that at the time of the vacation of the premises, Defendants were paying the amount of $2,100 per month for the combined space." (March 17, 2023 Judgment.)

**{¶99}** Although there was no on the record agreement or stipulation to this fact, Appellants did not challenge Vidale's testimony that they owed him $2,100 per month in lease payments or present evidence to the contrary. He testified to this fact twice. Vidale testified he was to receive $2,100 per month from Appellants for collective rent for five units. The lease agreements only list four units. He said he only received $1,400 for July's rent, which fell short of the $2,100 owed for that month. Thus, they still owed $700 for July of 2020 ($2,100 minus $1,400 is $700). There was no objection to this testimony. Moreover, it is undisputed they did not pay for the months of August, September, and October.

**{¶100}** As stated, McNally authenticated a ledger of amounts Appellants paid to Canfield Properties in 2020. The ledger reflects payments in the amount of $2,100 for January, February, March, April, and May. For the month of June 2020, the ledger indicates "free rent." And for July, the ledger reflects payments in the amount of $1,050.

(Trial Tr. 14-19; Exhibit C.) Thus, the ledger supports Vidale's testimony that Appellants were paying $2,100 per month total at the end of their lease term.

**{¶101}** The ledger introduced during Attorney McNally's testimony reflects Appellants paying $2,100 per month. This amount is incompatible with the lease agreements. The two lease amounts equal $1,469.50 per month ($607 for lease B and $862 for lease A during the first 2.5 years). Lease A states that after the expiration of the initial 2.5-year lease term, the rent would increase to $927.19 per month. And $927.19 plus $607 equals $1,534.19.

**{¶102}** Yet, Appellants did not object to this testimony about the $2,100 per month or the introduction of the ledger as an exhibit. They likewise did not introduce opposing testimony tending to show the rent was limited to that explicitly contained in two lease agreements. Notwithstanding, there were references in the parties' testimony that Appellants had leased an additional unit for a total of five units. This coupled with the unobjected to and testimony and ledger show no error.

**{¶103}** Accordingly, the $2,100 lease payment amount is not against the manifest weight of the evidence as it is supported by some competent, credible evidence. Thus, this argument lacks merit, and this assignment of error lacks merit in its entirety.

**{¶104}** We note there is no testimony or evidence as to how the $2,100 is divisible between the two lease agreements. Thus, because Edward is not responsible for the lease payments associated with the 2008 lease agreement, we direct the trial court on remand to determine what portion of the $2,100 monthly lease obligation was associated with which lease when re-assessing damages.

## Conclusion

**{¶105}** We affirm the trial court's decision in part, reverse in part, and remand.

**{¶106}** We conclude Appellants' argument about the statute of frauds has merit in part. Edward should not be found a party to and responsible for the 2008 lease that names him as a party, but which he did not sign.

**{¶107}** Further, this court finds Kimberly personally responsible for all outstanding lease payments due under both leases and Edward only liable for the lease payments associated with the second lease dated September 1, 2009, regarding Suites B, D, and

Case No. 23 MA 0052

E, joint and several with Kimberly.  We also find Appellants' company, C&C, was not a party to either lease agreement.

**{¶108}** On remand, the trial court is to re-assess the damages award and determine which amount Edward and Kimberly should be found joint and several pursuant to the 2009 lease and which amount is owed under the 2008 lease for which Kimberly is solely responsible.  In doing so, the trial court must determine which portion of the $2,100 monthly lease obligation was associated with each lease.

Waite, J., concurs.

Hanni, J., dissents with dissenting opinion.

Hanni, J., dissents with dissenting opinion.

{¶109} With regard and respect for my colleagues, I must dissent in part from the majority opinion. I would find merit with Appellants' first, second, third, and seventh assignments of error. I would reverse the trial court's judgment based on the merit of these assignments of error.

{¶110} Regarding the first, second, and third assignments of error, the majority concludes the leases are unambiguous and that Kimberly and Edward signed the leases in their personal capacities. To the contrary, I would find that the lease terms are ambiguous as to whether Kimberly and Edward signed the leases in their personal capacities. Because of the ambiguity, I would construe the lease terms against the drafter, in this case the lessor.

{¶111} Terms in a contract are ambiguous if their meanings cannot be determined from reading the entire contract, or if they are reasonably susceptible to multiple interpretations. *First Natl. Bank of Pennsylvania v. Nader*, 9th Dist. Medina No. 16CA0004-M, 2017-Ohio-1482, ¶ 25. When a contractual provision is ambiguous, that provision is to be strictly construed against the drafter. *Columbiana Cty. Bd. of Commrs. v. Nationwide Ins. Co.*, 130 Ohio App.3d 8, 15, 719 N.E.2d 561 (7th Dist.1998), citing *McKay Machine Co. v. Rodman*, 11 Ohio St.2d 77, 80, 228 N.E.2d 304 (1967).

{¶112} Both leases state they are being entered into "by and between" the landlord and "Concepts & Creativity LLC Members dba Dance Studio, hereinafter referred to as Tenant." The majority finds that because there is no comma or "and" between the terms "LLC" and "Members", the leases do not identify the company as the tenant but instead identify the members/Appellants as the tenants. Because the Appellants are the tenants, the majority concludes they are personally liable on the leases.

{¶113} The majority also points to paragraph 22 of the leases in support of finding Appellants personally liable. Admittedly, paragraph 22 states that Kimberly (in both the 2008 and the 2009 leases) and Edward (in the 2009 lease) personally guarantee the performance of the lease. If Appellants had then signed the leases in their personal capacities, I would likely agree with the majority that they are personally liable. But our inquiry does not end here.

Case No. 23 MA 0052

**{¶114}** As explained by our sister courts:

"The signature itself represents a clear indication that the signator is acting as an agent if: (1) the name of the principal is disclosed, (2) the signature is preceded by words of agency such as 'by' or 'per' or 'on behalf of', and (3) the signature is followed by the title which represents the capacity in which the signator is executing the document, e.g., 'Pres.' or 'V.P.' or 'Agent.'"

*Baltes Commercial Realty v. Harrison*, 2d Dist. Montgomery No. 23177, 2009-Ohio-5868, ¶ 56, quoting *George Ballas Leasing, Inc. v. State Sec. Serv., Inc.*, 6th Dist. Lucas No. L-91-069, 1991 WL 280135 (Dec. 31, 1991), citing *Spicer v. James*, 21 Ohio App.3d 222, 223, 487 N.E.2d 353 (2d Dist.1985).

**{¶115}** In this case, the elements indicating that Kimberly and Edward signed the leases as agents of the LLC, as opposed to in their personal capacities, are present.

**{¶116}** As to the 2008 lease, it was signed by Kimberly as follows:

TENANT

Mr. & Mrs.

dba *Concepts & Creativity, LLC*

BY: *Member, Kimberly Lisowski*

(Exhibit A). The italicized and underlined terms are handwritten in cursive. The other words are typewritten.

**{¶117}** As to the 2009 lease, it was signed by Kimberly and Edward as follows:

TENANT

Mr. & Mrs.

dba

BY: *Kimberly Lisowski*

Case No. 23 MA 0052

TITLE: *member*

(Exhibit B).  Edward also signed this lease as "Edward Lisowski, Member" across from where Kimberly signed.  Again, the italicized and underlined terms are handwritten and in cursive.

**{¶118}** In the 2008 lease, (1) the name of principal ("Concepts & Creativity, LLC") is disclosed; (2) the signature is preceded by a word of agency ("by"); and (3) the signature includes the title ("Member") that represents the capacity in which Kimberly is signing.

**{¶119}** In the 2009 lease, the name of the principal is not listed.  But the signature page indicated that Kimberly and Edward are signing as agents because they signed their names using a word of agency ("by") and indicating their title ("Member").  Additionally, the LLC is clearly identified earlier in the 2009 lease.

**{¶120}** Considering the leases as a whole, specifically paragraph 22 along with the signature pages, I would conclude that they are ambiguous as to whether Appellants gave their personal guarantee.  Given this ambiguity, I would construe these terms against the drafter/lessor.  Thus, I would find that Kimberly and Edward were not personally liable on the leases.

**{¶121}** Regarding the seventh assignment of error, the majority concludes the trial court's decision was supported by the weight of the evidence, including the finding that the monthly rent was $2,100.  I would find to the contrary.

**{¶122}** The monthly rental amounts in the two leases initially equaled $1,469 per month ($607 for lease B and $862 for lease A during the first 2.5 years).  Lease A states that after the initial 2.5-lease term, the rent will increase to $927.19 per month.  Thus, per the terms of the leases for the months at issue (July, August, September, and October 2020), the total monthly rent was $1,534.19.  Appellee did not introduce any evidence that the parties executed an amendment or addendum to either lease to modify the agreed monthly rent.

**{¶123}** Based on the foregoing, I would reverse the trial court's findings that Kimberly and Edward were personally liable and that the monthly rent was $2,100.

_____

For the reasons stated in the Opinion rendered herein, it is the final judgment and order of this Court that the judgment of the Municipal Court of Mahoning County, Ohio is affirmed in part, and reversed in part.  We hereby remand this matter to the trial court for further proceedings to determine which portion of the $2,100 monthly lease obligation was associated with each lease according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**